272 P.3d 355

**MURPHY FARRELL DEVELOPMENT, LLLP, an Arizona limited liability limited partnership; and Rock Resources, a defunct Arizona corporation, Plaintiffs/Appellees/Cross–Appellants,**

v.

**Clay SOURANT, a single man, dba Jake's Crane & Rigging, Defendant/Appellant/Cross–Appellee.**

No. 1 CA–CV 10–0635.

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 16, 2012.

As Amended June 29, 2012.

Clark Hill PLC By Mark S. Sifferman, Scottsdale, Attorneys for Plaintiffs/Appellees/Cross–Appellants.

Beus Gilbert PLLC By Mark C. Dangerfield, Scottsdale, Attorneys for Defendant/Appellant/Cross–Appellee.

TIMMER, Judge.

¶ 1 This appeal and cross-appeal present several issues concerning the availability of equitable relief to remedy appellee Clay Sourant's breaches of agreements with appellant Murphy Farrell Development, LLLP, and the trial court's discretion to deny Sourant an award of attorney's fees under the terms of these agreements. For the reasons that follow, we affirm in part, reverse in part, and remand with instructions for additional proceedings.

## BACKGROUND

¶ 2 John Murphy ("Murphy") and his wife are co-trustees of the Murphy Family Trust, which serves as the general partner in both Murphy Farrell Development, LLLP ("Murphy Farrell") and Little Horse Ranch, LLLP ("Little Horse"). Little Horse, in turn, operates OX Ranch, a "cow-calf" business, which is located north of Congress, Arizona. OX Ranch is comprised of land owned by Murphy Farrell, Little Horse, and their limited partners, and government-owned land on which Little Horse leases grazing rights.

¶ 3 Sometime in the late 1990s, Murphy realized OX Ranch could support more than a cattle business. He formed Rock Resources, Inc. ("Rock Resources") to harvest decorative rocks and boulders [1] from OX Ranch and sell them to urban landscapers; Rock Resources paid Murphy Farrell royalties for harvested boulders. Rock Resources employed Clay Sourant who, among other things, was responsible for locating areas within or near OX Ranch with accessible, marketable boulders. Sourant left employment with Rock Resources in the late 1990s to strike out on his own in the decorative boulder business.

¶ 4 Santa Fe Pacific Railroad ("Santa Fe") owns mineral rights to state-owned land within and near OX Ranch. In January

---

**1.** For ease of reference, we refer to "rocks and boulders" throughout the remainder of this decision as "boulders."

2000, Santa Fe quit-claimed to Sourant rights to harvest boulders located within forty feet of the surface of its land (the "Mineral Land"). Sourant believed he had acquired rights to about 320 acres, paying $500/acre for a total of $160,000, but the legal description in the quit claim deed described approximately 240 acres, omitting an eighty-acre area (the "Omitted Parcel"). The State granted Sourant an access lease to the Mineral Land and thirty additional acres. Santa Fe then entered negotiations to grant Sourant the right to extract, crush, and remove granite from this additional acreage (the "Quarry Property").

¶ 5 Approximately four months later, in May 2000, Sourant, Murphy Farrell, and Rock Resources entered a written agreement (the "May Agreement") wherein, among other things, Sourant granted Murphy Farrell (1) the exclusive right to harvest boulders from the Mineral Land in exchange for royalty payments, (2) a right of first refusal in the Quarry Property, which the Agreement stated would be located on thirty acres, and (3) an option to participate equally with Sourant in harvesting boulders from 400 additional state-owned acres upon Sourant's successful completion of negotiations with Santa Fe for the surface mineral rights.[2] The parties also agreed that when Murphy Farrell had paid $961,182.97 in royalties, Sourant would transfer title to any remaining boulders on the Mineral Land to Murphy Farrell. The May Agreement set forth the same legal description for the 240 acres used in Santa Fe's quit claim deed and then inaccurately recited that the Mineral Land "total[ed] 320.00 acres more or less."

¶ 6 Two months after execution of the May Agreement, Sourant completed negotiations with Santa Fe and acquired quarry rights to ten acres within the legal description set forth in the Agreement rather than thirty acres, as stated in the May Agreement. He concurrently acquired quarrying rights from Santa Fe to fifty nearby acres outside the Quarry Property.

¶ 7 Rather than harvest boulders from the Mineral Property itself, Murphy Farrell agreed that Rock Resources would do so, keep the profits, and then pay Murphy Farrell a volume-based royalty. After Rock Resources ceased business in about January 2003, Murphy Farrell entered in a similar agreement with Rock Source, LLC ("Rock Source"), which had purchased Rock Resources' assets and has no affiliation with Murphy Farrell. Rock Resources, and later Rock Source, harvested the Mineral Land and the Omitted Parcel and paid royalties to Murphy Farrell, which passed a portion of the royalties to Sourant pursuant to the May Agreement. Later, in Spring 2005, despite the right of first refusal granted to Murphy Farrell, Sourant offered to sell Rock Source a thirty percent interest in the Quarry Property.

¶ 8 In July 2000, Murphy Farrell and Sourant entered in a second agreement (the "July Agreement"), wherein Sourant agreed to assign his surface mineral rights to an additional 450 acres near OX Ranch to Murphy Farrell in exchange for a pre-payment of $290,000 in royalties owed under the May Agreement. Among other things, Sourant also agreed not to directly or indirectly compete with Rock Resources in the sale of decorative boulders or assist others to acquire rights to surface boulders on land located within twenty miles of the 450 acres for a period of five years. The Agreement stated that this non-compete provision could be enforced by either Rock Resources or Murphy Farrell. Despite this agreement, in Spring 2003, Sourant offered to help Rock Source purchase mineral rights from Santa Fe, although nothing came of the offer. In the waning days of the five-year period, May 2005, Sourant contacted Santa Fe's mineral rights broker, Newmont Realty Company ("Newmont"), and offered to purchase surface mineral rights on approximately 600 unidentified acres located within the area subject to the covenant not to compete. Santa Fe did not accept the offer.

2. The Agreement also reflected Sourant's sale of equipment to Rock Resources and Rock Resources' agreement to pay one-half of Sourant's lease payments due to the state for surface rights. None of the issues on appeal relate to these aspects of the Agreement.

¶ 9 In May 2006, ten months after expiration of the covenant not to compete, Santa Fe conveyed to Sourant surface mineral rights on approximately 850 acres (the "850 Acres"), which included the Omitted Parcel. Sourant paid $42,200 for the portion of the 850 Acres making up the Omitted Parcel.

¶ 10 After Murphy Farrell paid Sourant $961,182.97 in royalties pursuant to the May Agreement, Sourant transferred title to the mineral rights he possessed in the Mineral Land to Murphy Farrell in July 2006 via quit claim deed; Sourant did not transfer title to rights in the Omitted Parcel. Murphy Farrell recorded the deed in April 2008.

¶ 11 Eventually, the parties became embroiled in disagreements concerning Sourant's performance under the May Agreement and the July Agreement, and Murphy Farrell filed this lawsuit initially seeking equitable and monetary relief. Prior to a bench trial, Murphy Farrell asked the court to enter findings of fact and conclusions of law pursuant to Rule 52(a), Arizona Rules of Civil Procedure ("Rule"). After a three-day trial, the court found that Sourant had breached the May Agreement by failing to afford Murphy Farrell its right of first refusal on the Quarry Property and breached the July Agreement by offering to assist Rock Source to acquire mineral rights in the area subject to the covenant not to compete and during the covenant period. The court further ruled that Murphy Farrell had not proven entitlement to a constructive trust due to the breaches and, because Murphy Farrell had dropped its request for monetary damages, Sourant was entitled to judgment in his favor. After the court denied the parties' post-trial motions and entered judgment, this timely appeal and cross-appeal followed.

## DISCUSSION

¶ 12 Because resolution of the issues raised in Murphy Farrell's cross-appeal may impact the propriety of the trial court's ruling on Sourant's request for attorney's fees, we address the cross-appeal first.

### Cross–Appeal

### I. Sufficiency of findings and conclusions

¶ 13 Murphy Farrell initially argues the trial court erred by failing to decide issues related to the Omitted Parcel and the Quarry Property. We review whether the court sufficiently addressed these issues de novo as a mixed question of fact and law. *See In re U.S. Currency in Amount of $26,980.00,* 193 Ariz. 427, 429, ¶ 5, 973 P.2d 1184, 1186 (App.1998); *see also Miller v. Bd. of Sup'rs of Pinal County,* 175 Ariz. 296, 298–300, 855 P.2d 1357, 1359–61 (1993) (reviewing sufficiency of trial court's findings of fact and conclusions of law without deference to court).

### A. Omitted Parcel

¶ 14 Murphy Farrell argues the trial court erred by failing to resolve whether it had rights in the Omitted Parcel. It contends that because the parties agreed Sourant would convey surface mineral rights to 320 acres rather than 240 acres as set forth in the legal description attached to the May Agreement, and Sourant subsequently acquired rights to the Omitted Parcel from Santa Fe in 2006, equity requires the court to grant Murphy Farrell the surface mineral rights in the Omitted Parcel. Sourant responds the court addressed this issue and denied relief by refusing to impose a constructive trust on the Omitted Parcel. Alternatively, Sourant contends remand is not necessary as we can decide Murphy Farrell is not entitled to rights in the Omitted Parcel for several reasons.

¶ 15 Although Murphy Farrell failed to allege it was entitled to rights in the Omitted Parcel in the amended complaint, the parties listed the issue as a material, contested one in the joint pretrial statement,[3] thereby effectively amending the complaint and presenting the matter for adjudication. *Carlton v. Emhardt,* 138 Ariz. 353, 355, 674 P.2d 907, 909 (App.1983); *see also Dawson v. Withycombe,* 216 Ariz. 84, 99, ¶ 37, 163 P.3d 1034,

---

**3.** The parties listed the issue as follows: "What rights do the parties have in the Omitted Parcel?"

1049 (App.2007). Because Murphy Farrell timely filed a Rule 52(a) request, the court was required to separately state its findings of fact and conclusions of law regarding this issue. *See Miller,* 175 Ariz. at 298–99, 855 P.2d at 1359–60.

¶ 16 We disagree with Sourant that the trial court resolved whether Murphy Farrell had rights in the Omitted Parcel by rejecting its request for a constructive trust. The court resolved Murphy Farrell's request for a constructive trust in conjunction with its allegation that Sourant breached the covenant not to compete in the July Agreement, and the trial court's findings and conclusions addressed the request in this context. The court did not separately address the parties' rights in the Omitted Parcel as a result of the purported mistake in the legal description.

¶ 17 The appropriate remedy generally for a trial court's failure to make required findings and conclusions is to remand to permit the court to comply with Rule 52(a). *Id.* at 300, 855 P.2d at 1361. Accordingly, we decline to resolve the issue in the first instance. Whether Murphy Farrell is entitled to rights in the Omitted Parcel as a matter of equity turns on contested facts the trial court is best able to assess, including the fact Sourant paid additional moneys to Santa Fe for mineral rights in the Omitted Parcel. *See id.* at 301, 855 P.2d at 1362 (declining to adjudicate issue on appeal not addressed in trial court findings as "final decision without findings was impossible without transforming this court into a factfinder resolving disputed issues of fact"). We therefore remand to permit the court to declare the rights of the parties in the Omitted Parcel.

**B. Quarry Property**

¶ 18 Murphy Farrell similarly argues the trial court erred by failing to address another issue it raised to the court—declaring the size and location of the Quarry Property in which Murphy Farrell holds a right of first refusal under the May Agreement. Sourant agrees Murphy Farrell properly raised the

issue but argues the court did not err because it had discretion to decline declaratory relief pursuant to Arizona Revised Statutes ("A.R.S.") section 12–1836 (2003), such relief is inappropriate because no justiciable controversy exists between the parties and, in any event, the right-of-first-refusal provision is invalid.

¶ 19 We agree with Murphy Farrell that the trial court erred by failing to enter findings of fact and conclusions of law regarding the size and location of the Quarry Property subject to the right of first refusal. Murphy Farrell sought declaratory relief on the issue in its amended complaint, and both parties acknowledged the issue in the joint pretrial statement.[4] We are not persuaded by Sourant's implicit argument that the trial court was relieved from its obligation to enter Rule 52(a) findings and conclusions because Murphy Farrell purportedly is not entitled to declaratory relief. Even assuming the court reached that conclusion, it was required to set forth its reasons under Rule 52(a), which is designed to: prompt the judge to consider issues more carefully, enable a defeated party to determine whether the ruling should be appealed, clarify the decision for purposes of applying the doctrines of res judicata and estoppel, and, most significantly, permit the appellate courts to examine the trial court's reasoning more closely. *Miller,* 175 Ariz. at 299, 855 P.2d at 1360.

¶ 20 Murphy Farrell asks us to resolve the outstanding issue without remanding to the trial court by declaring that the right of first refusal is viable, the Quarry Property subject to this right consists of thirty acres as described in the May Agreement, and Sourant's quarry operations must be restricted to that parcel, thereby preventing him from conducting such operations on the adjacent fifty acres. We decline the request. The trial court is in the best position to resolve the factual dispute regarding the parties' intent in describing the Quarry Property acreage in the May Agreement. *See id.* at 300, 855 P.2d at 1361. Additionally, whether Sourant's quarry operation can be restricted to the

---

4. Murphy Farrell listed as a material contested issue, "[w]hat is the physical location and size of the 'Quarry Property' in the May 2000 Agree-

ment?" Sourant similarly named "[w]hat is the meaning of 'Quarry Property' in the May 2000 Agreement" as a material and contested issue.

Quarry Property—whatever its dimensions—was not raised in the pleadings or joint pretrial statement and is therefore not at issue in this lawsuit. We leave the remaining arguments regarding the merits of the properly raised declaratory judgment request for resolution by the trial court and therefore remand for that purpose.[5]

## II. Constructive trust

¶ 21 Murphy Farrell finally argues the trial court erred by ruling that imposition of a constructive trust on the 850 Acres was not an available remedy for Sourant's breach of the covenant not to compete set forth in the July Agreement.[6] We review the court's ruling concerning the availability of an equitable remedy de novo as an issue of law. *Andrews v. Blake,* 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

¶ 22 The trial court found that Sourant had breached the covenant not to compete by approaching Rock Source and offering to help it obtain mineral rights within the area covered by the covenant while the covenant was in effect. The court ruled, however, that imposition of a constructive trust was not available to remedy the breach as a matter of law, reasoning as follows:

> The parties did an excellent job of providing citations to the relevant Arizona authorities on the question of when a constructive trust may be imposed. All of these cases recognize that such a trust is not available to remedy a run of the mill contractual breach, which can be addressed by an award of money damages. The nature of Sourant's breaches and the general negotiations occurring during late 2005 and early 2006 (which negotiations did not involve specified parcels, but rather references to areas of interest within the

large holdings of the potential seller) confirm that this is not an instance in which equitable remedies are warranted. *If Sourant were the owner of a specific parcel of realty that [Murphy Farrell] could establish would have been conveyed to it but for some inequitable conduct by Sourant, the result might [be] otherwise.*

(Italicized emphasis added.) Murphy Farrell seizes on the italicized language in the ruling and argues the court erred by applying a "but for" causation element as a condition for imposing a constructive trust. Sourant counters the trial court ruled appropriately because Murphy Farrell failed to prove unconscionable conduct or other inequity beyond the breach of the covenant, and the property does not "justly belong" to it.

¶ 23 A constructive trust is an equitable remedy that is not subject to any "unyielding formula" for imposition, *Turley v. Ethington,* 213 Ariz. 640, 643, ¶ 9, 146 P.3d 1282, 1285 (App.2006) (citation omitted), but is not without limits. When property is obtained through unconscionable conduct, such as fraud, concealment, or undue influence, a constructive trust is available to prevent the title holder from continuing to reap the benefits of ownership. *In re Rose's Estate,* 108 Ariz. 101, 104, 493 P.2d 112, 115 (1972). The remedy is tied to unjust enrichment of the defendant and, although typically invoked when the enrichment is at the plaintiff's expense, *Burch & Cracchiolo, P.A. v. Pugliani,* 144 Ariz. 281, 285–86, 697 P.2d 674, 678–79 (1985), it may be imposed when the plaintiff has not suffered a loss of ownership, such as when the defendant wrongly prevented the plaintiff from acquiring the property or reaped a profit through violation of a fiduciary duty owed to the plaintiff. *Restatement (First) of Restitution* § 160, cmt.d (1937) (cited with approval in *Turley,* 213 Ariz. at

---

5. Sourant argues Murphy Farrell is not entitled to declaratory relief because, among other reasons, the right-of-first-refusal provision violates the rule against perpetuities and, alternatively, Sourant did not breach the provision. But because the trial court ruled Sourant breached the provision, it necessarily found the provision valid and enforceable. The propriety of that ruling is not raised on appeal and is therefore final and serves as law of the case. *See Bogard v. Cannon & Wendt Elec. Co.,* 221 Ariz. 325, 332, ¶ 24, 212 P.3d 17, 24 (App.2009) (holding that rulings not

challenged on appeal are implicitly affirmed); *Bilke v. State,* 221 Ariz. 60, 63, ¶ 11, 209 P.3d 1056, 1059 (App.2009) (concluding that trial court ruling not challenged on appeal is law of the case).

6. Murphy Farrell does not argue the court erred by refusing to impose a constructive trust to remedy Sourant's breach of the right of first refusal set forth in the May Agreement.

644, ¶ 11, 146 P.3d at 1286). At a minimum, however, the plaintiff must have an equitable interest in the property wrongly held by the defendant to give rise to the defendant's duty to convey that property to the plaintiff. *See id.* cmt. a (stating that "in the case ... of a constructive trust one person holds the title to property subject to an equitable duty to hold the property for or to convey it to another, and the latter has in each case some kind of an equitable interest in the property."); *see also Nitrini v. Feinbaum,* 18 Ariz. App. 307, 311, 501 P.2d 576, 580 (1972) (defining constructive trust as device to compel one who unfairly holds a property interest to convey that interest "to another to whom it justly belongs.").

 ¶ 24 We disagree with Murphy Farrell that the trial court required proof that Sourant's breach of the covenant not to compete caused Murphy Farrell to lose all or part of the 850 Acres before the court would consider imposing a constructive trust. We read the above-italicized language in the court's ruling to mean only that if Sourant's breach had enabled him to purchase property that otherwise should have gone to Murphy Farrell, the latter may have an equitable interest in that property, and the court would impose a constructive trust. The court did not foreclose other ways by which Murphy Farrell could hold an equitable interest in the 850 Acres; it simply did not address them. In our review, we consider these "other ways," bearing in mind that a constructive trust must be established by clear and convincing evidence. *King v. Uhlmann,* 103 Ariz. 136, 142, 437 P.2d 928, 934 (1968).

 ¶ 25 Murphy Farrell essentially argues it possesses an equitable interest in all or part of the 850 Acres due to Sourant's breach of the covenant not to compete. No evidence supports a finding that Murphy Farrell either suffered a loss of the 850 Acres or was deprived an opportunity to acquire it in whole or in part by Sourant's offer to assist Rock Source in acquiring mineral rights in the area, which the court found constituted a breach of the covenant. Nor does the evidence demonstrate that Sourant was able to purchase the property as a result of this breach. In short, because there is no connection between Sourant's breach of the covenant and his purchase of the 850 Acres, Murphy Farrell has no equitable interest in that property, and a constructive trust is not an available remedy. Thus, this case is distinguishable from cases cited by Murphy Farrell in which a constructive trust was placed on property wrongly held as a direct result of a breach of a non-compete provision or other restrictive covenant. *See Snepp v. United States,* 444 U.S. 507, 515–16, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) (imposing constructive trust in favor of government on profits from book authored by former CIA agent that were attributable to his violation of fiduciary obligations to CIA); *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.,* 914 F.2d 556, 564 (4th Cir.1990) (holding investment analyst entitled to constructive trust on profits realized by investor when it breached noncircumvention agreement by using analyst's information to directly buy lease portfolio); *Storage Tech. Corp. v. Cisco Sys., Inc.,* 395 F.3d 921, 925 (8th Cir.2005) (stating that in Minnesota, remedy for breach of covenants attendant to employment relationship is imposition of constructive trust on profits of breach); *Cherne Indus., Inc. v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 94–95 (Minn. 1979) (to same effect).

¶ 26 Murphy Farrell also contends the court should have imposed a constructive trust on the 850 Acres because Sourant breached the covenant by informing Newmont by letter in May 2005—shortly before expiration of the five-year covenant period—of his interest in purchasing additional mineral rights, thereby interfering with Murphy Farrell's relationship with Newmont and leading to Sourant's eventual acquisition of the 850 Acres. But the trial court did not find that Sourant's contact with Newmont at the end of the covenant period constituted a breach.[7] Because Murphy Farrell does not

---

7. In an exchange with Sourant's counsel during closing argument, the court commented that one of Sourant's breaches "is evidenced by the letters that reflect [Sourant has] been in negotiations to purchase additional boulders with Santa Fe or Newmont Entities, which occurred during the time of the contractual agreement." Murphy Farrell equates this comment to an oral finding

challenge that aspect of the ruling on appeal, we cannot say the court erred by failing to remedy the alleged breach.

¶ 27 Although the trial court did not find that Sourant breached the non-compete provision by sending his May 2005 letter to Newmont, it apparently referred to this letter when discussing remedies by referring to "general negotiations" that occurred in late May 2005 and early 2006. *See supra* ¶ 22. Even assuming the court intended to find an additional breach due to the May 2005 letter and merely omitted this finding, however, we conclude the court correctly refused to impose a constructive trust on this basis. The May 2005 offer was not specific to any particular property owned by Santa Fe and was not accepted by Newmont on Santa Fe's behalf. Also, the record does not demonstrate that this letter gave Sourant any advantage over Murphy Farrell in the eventual sale of the 850 Acres, which took place well after expiration of the covenant period in July 2005. Indeed, Santa Fe solicited offers from both Sourant *and* Murphy Farrell in September 2005, but only Sourant engaged in negotiations at that point; nothing shows Murphy Farrell was cast out of the running for acquisition of any mineral rights, including rights to the 850 Acres, as a result of Sourant's unauthorized contact during the covenant period. Thus, Murphy Farrell did not possess an equitable interest in the 850 Acres even assuming Sourant breached the non-compete provision by sending the May 2005 letter.

¶ 28 Murphy Farrell also argues the court erred by failing to impose a constructive trust on the profits Sourant realized in the sale of the Mineral Land to Murphy Farrell as reflected in the May Agreement. It relies on Sourant's testimony that he targeted the mineral rights in parts of OX Ranch he knew had boulders for purchase from Santa Fe and resale to Murphy Farrell.

Because he gained this knowledge from his employment with Rock Resources, and Murphy Farrell contends this information was confidential, it argues the court should impose a constructive trust on the profits of the resale. As Sourant points out, however, Murphy Farrell did not raise this claim to the trial court, and it has therefore waived the argument on appeal. *See Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, 171, ¶ 52, 171 P.3d 610, 622 (App.2007) (stating appellate court generally does not consider issues raised for the first time on appeal). Moreover, our review of the record does not reveal any evidence of a confidentiality or non-disclosure agreement as a condition of Sourant's employment with Rock Resources. For these reasons, we reject Murphy Farrell's argument.

¶ 29 In conclusion, the trial court properly declined to impose a constructive trust on any portion of the 850 Acres because Murphy Farrell lacked an equitable interest in that property.

## Appeal

¶ 30 Sourant appeals the trial court's denial of his request for attorney's fees pursuant to the terms of the May Agreement and the July Agreement, which mandate an award to the "prevailing" party in litigation (the "fee provisions").[8] The court denied Sourant's request, reasoning, "[t]he Court would award [Sourant] all requested fees in this case but for the fact that the Court found relief was barred because of [Murphy Farrell's] selected remedy (as opposed to the merits of the case)." Sourant argues the trial court erred because he "prevailed" in the lawsuit despite the court's finding he breached the Agreements. Murphy Farrell primarily counters Sourant's breach of the Agreements relieved it of further perform-

---

of fact and conclusion of law. Rule 52(a) (permitting the court to make findings and conclusions orally at the close of evidence). We disagree, as the court clearly chose to set forth its findings and conclusions in written format, as explicitly stated in its ruling entered October 19, 2009, and did not find this event to be a breach of the covenant.

8. The May Agreement provides, "the prevailing party [in litigation] shall be entitled to recover ... reimbursement for reasonable attorney's fees." Similarly, the July Agreement states, "the party or parties prevailing in [] litigation will be entitled ... to their reasonable attorneys' fees ... which will be determined by the court."

ance under the Agreements, including paying attorney's fees.[9]

¶ 31 We review the court's interpretation of the fee provisions de novo as an issue of law. *See Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17, 141 P.3d 824, 830 (App.2006). We will uphold the court's implicit determination that Sourant is not the "prevailing party" if it had a reasonable basis for doing so, thereby properly exercising its discretion. *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 334, ¶¶ 34–35, 214 P.3d 415, 422 (App. 2009) (applying principle in context of determining who is the "successful party" under A.R.S. § 12–341.01 (2003)).

¶ 32 Unlike discretionary fee awards made pursuant to A.R.S. § 12–341.01(A), the trial court lacks discretion to deny a fee award required by the terms of the parties' contract.[10] *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (App. 1994). Consequently, the trial court erred by refusing to award fees to Sourant unless his breaches prevented him from reaping the benefit of the fee provisions, or he was not the prevailing party. We address each issue in turn.

¶ 33 We reject Murphy Farrell's contention that Sourant's breaches excused enforcement of the fee provisions against it. We agree with Murphy Farrell that an uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract. *Zancanaro v. Cross*, 85 Ariz. 394, 400, 339 P.2d 746, 750 (1959) (holding that victim of a minor or partial breach must continue own performance but victim of a material or total breach is excused from further performance); *Restatement (Second) of Contracts* § 242, cmt. a (2011) (explaining non-breaching party's duty to perform suspended to allow breaching party to cure but stating that non-breaching party's duties to perform discharged if material breach not capable of being cured or not cured within reasonable time). But the fee provisions in the Agreements do not mandate any performance by Murphy Farrell; they direct a court to award fees to the prevailing party in any contractual dispute. It follows, therefore, that even assuming Sourant's breaches of the Agreements were material, they had no impact on the viability of the fee provisions. We therefore turn to the primary point of contention between the parties: Did Sourant prevail in the litigation despite his breaches of the Agreements? Phrased more glibly, "who won?"

¶ 34 Sourant's breaches of the Agreements do not necessarily preclude him from being the "prevailing party." We are guided in this conclusion by our supreme court's decision in *Ocean West Contractors, Inc. v. Halec Construction Co.*, 123 Ariz. 470, 600 P.2d 1102 (1979). In that case, Halec, a subcontractor, sued Ocean West, a general contractor, for failing to pay sums due under a construction contract. *Id.* at 472, 600 P.2d at 1104. Ocean West counterclaimed, seeking damages incurred after Halec walked off the job. *Id.* The trial court found that Halec breached the contract but that Ocean West still owed money for the work completed before Halec left the job. *Id.* at 472–73, 600 P.2d at 1104–05. After offsetting back charges and credits, the court awarded Halec damages and attorney's fees pursuant to a

9. Murphy Farrell also argues that the trial court properly denied Sourant's request for fees because he failed to sufficiently make the request in his pleadings. We disagree. Sourant's answer set forth a prayer for fees pursuant to the terms of the Agreements. *Cf. Robert E. Mann Const. Co. v. Liebert Corp.*, 204 Ariz. 129, 133, ¶ 12, 60 P.3d 708, 712 (App.2003) (holding defendant waived request for fees pursuant to contract provision by only generally referring to fees in the answer and not citing the contract). Additionally, both parties listed as a material issue in the joint pretrial statement, "[f]or purposes of any award of attorneys' fees, who is the prevailing party?"

10. Murphy Farrell cites cases outside Arizona that hold a trial court has discretion to refuse to award fees under a mandatory fee provision if it would be inequitable or unreasonable to do so, such as when the requesting party acted improperly. *See, e.g., Anderson v. Melwani*, 179 F.3d 763, 766 (9th Cir.1999); *United States ex rel. DeBlasio Constr. Co. v. Mountain States Constr. Co.*, 588 F.2d 259, 263 (9th Cir.1978); *Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 793 P.2d 258, 261 (1990). But that is not the law in Arizona.

mandatory fee provision in the parties' contract. *Id.* In the subsequent appeal, the supreme court acknowledged Halec's breach of contract but agreed Halec was the prevailing party entitled to fees because it was the party entitled to damages after applying all setoffs. *Id.* at 473–74, 600 P.2d at 1105–06; *see also Trollope v. Koerner*, 21 Ariz.App. 43, 47, 515 P.2d 340, 344 (1973) (deciding "a party will be 'successful' if he obtains judgment for an amount in excess of the setoff or counterclaim allowed").

¶ 35 The present case presents a factually distinct situation from *Ocean West Contractors* and other "net judgment rule" cases as Murphy Farrell did not breach the Agreements and ultimately sought only equitable relief, so setoffs were not at issue. Nevertheless, those cases persuade us that even in the face of a breach of contract or other improper conduct by a party seeking fees, the court must assess the overall outcome of the case to determine if that party "prevailed" in the lawsuit.

■ ¶ 36 When deciding who is the "successful party" entitled to fees under A.R.S. § 12–341.01(A) when a case "involve[es] multiple claims and varied success" and the "net judgment rule" is inapplicable, the trial court may use a "percentage of success" factor or a "totality of the litigation" rubric to determine which party prevailed. *Berry v. 352 E. Va., L.L.C.*, 228 Ariz. 9, 13–14, ¶ 22, 261 P.3d 784, 788–89 (App.2011) (citing *Schwartz v. Farmers Ins. Co. of Ariz.*, 166 Ariz. 33, 38, 800 P.2d 20, 25 (App.1990); *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 126 Ariz. 44, 49, 612 P.2d 500, 505 (App.1980)). We discern no reason to apply a different paradigm in deciding which party is the "prevailing party" under the terms of the Agreements.

■ ¶ 37 In the present case, Murphy Farrell did not succeed on any of its claims, and the trial court therefore erred by failing to find that Sourant prevailed in the lawsuit.

Although Murphy Farrell proved Sourant's breach of the Agreements, it failed to establish entitlement to any remedy, and the court therefore entered judgment for Sourant on all claims. Indeed, the trial court acknowledged Sourant's status in part by awarding him taxable costs due the "successful party" pursuant to A.R.S. § 12–341 (2003). *See Drozda v. McComas*, 181 Ariz. 82, 85, 887 P.2d 612, 615 (App.1994) ("The term 'successful party' means the party who wins the lawsuit."). Sourant was the "prevailing party" in the lawsuit, and the trial court erred by failing to award him reasonable fees for successfully defending Murphy Farrell's claims. We therefore reverse the court's order denying fees to Sourant. On remand, after the court rules on Murphy Farrell's requests for declaratory judgment concerning the Omitted Parcel and the Quarry Property, the court should determine anew which party, if any, is the prevailing party entitled to an award under the fee provisions. In doing so, the court should apply the "percentage of success factor" or the "totality of the litigation" test. Assuming the court finds either party prevailed, it must enter an award for a reasonable amount of attorney's fees.[11]

### Attorney's fees on appeal

¶ 38 Both parties ask for an award of attorney's fees expended on appeal pursuant to the fee provisions in the Agreements. In light of our decision, neither party has yet "prevailed" in the litigation. We therefore deny both requests. *See Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 213, ¶ 81, 236 P.3d 421, 440 (App.2010) (holding that "successful party" is one who is the "ultimate prevailing party" in the litigation). On remand, however, the court should award the prevailing party reasonable attorney's fees expended on appeal. Applying the "totality of the litigation test," we conclude neither party is the "successful

---

11. Sourant contends that regardless of any award under the fee provisions, the trial court erred by neglecting to award fees after ruling "an award of fees with respect to the discovery disputes is appropriate," but "defer[ring] consideration of any award until resolution on the merits." Murphy Farrell does not dispute Sourant's

entitlement to discovery sanctions but contends he failed to separately segregate such fees from his request. On remand, the court should award whatever fees Sourant is entitled to receive as a result of the discovery sanctions awarded by the court in its order entered December 9, 2008.

party" on appeal entitled to taxable costs as both were successful and unsuccessful in equal measure. A.R.S. § 12–341; *see Bank One, Ariz. v. Rouse,* 181 Ariz. 36, 41, 887 P.2d 566, 571 (App.1994) (concluding in context of A.R.S. § 12–341.01 that trial court did not err by deciding neither party was "successful party" as they prevailed in equal measure).

## CONCLUSION

¶ 39 We affirm the judgment to the extent it denies Murphy Farrell's request for a constructive trust on all or part of the 850 Acres. We reverse the remainder of the judgment and remand with instructions for the court to (1) declare the parties' rights in the Omitted Parcel, (2) declare the size and location of the Quarry Property subject to Murphy Farrell's right of first refusal, and (3) determine which party prevailed in the litigation and award that party reasonable attorney's fees expended in the trial court and on appeal.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and ANDREW W. GOULD, Judge.