NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

DANIEL C. SCHICKNER, *Petitioner/Appellee,*

*v.*

RENNA M. SCHICKNER nka MATTHEWS, *Respondent/Appellant.*

No. 1 CA-CV 16-0490 FC
FILED 10-3-2017

Appeal from the Superior Court in Mohave County
No. S8015DO201000482
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Rowley Long & Simmons, PLLC, Mesa
By Scott R. Rowley
*Counsel for Petitioner/Appellee*

The Wilkins Law Firm, PLLC, Phoenix
By Amy M. Wilkins
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

¶1        Renna M. Schickner now known as Matthews ("Wife") appeals the family court's post-dissolution orders on remand; denial of her petition for modification of spousal maintenance and motion for new trial; and denial of her requests for attorneys' fees and the award of attorneys' fees related to the spousal maintenance petition in favor of Daniel C. Schickner ("Husband").  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2        The parties married in 1998 and have two minor children, born in 2002 and 2005.  During the marriage, the parties acquired a fifty percent community interest in Western Medical Eye Center, L.L.C. ("WME"), where Husband practices as an ophthalmologist, and a twenty percent community interest in Physicians Surgery Center, L.L.C. ("PSC"), where Husband performs surgeries.  Both WME and PSC are in the Bullhead City/Kingman area of Arizona.

¶3        In June 2010, Husband filed a petition for dissolution of the marriage.  The parties disputed the characterization of post-petition distributions Husband received from WME and PSC—with Wife arguing the distributions were community assets and Husband arguing they were tied to his toil and labor, and thus were his sole and separate property—and Wife moved for temporary orders seeking a declaration that, pending a final decree, she was entitled to receive a one-half share of those distributions.  After an evidentiary hearing on the motion, the family court held the distributions were "appropriately characterized as salary or earned income," and denied Wife's motion.  At the same time, the court made several additional temporary orders, including that Husband reimburse Wife for one-half of the $3,200 monthly mortgage payments on the family

---

[1]        We derive some of the facts from this court's previous opinion in *Schickner v. Schickner*, 237 Ariz. 194 (App. 2015).

residence occupied by Wife, pay Wife $7,000 per month for spousal maintenance, and pay $2,060 in monthly child support.

¶4        As the matter progressed to trial, the case was reassigned to a different judge.  At trial, two of the primary contested issues were (1) the character of the distributions from WME and PSC following Husband's filing of the petition for dissolution,[2] and (2) the value of the community's interests in WME and PSC.

¶5        In June 2013, the family court issued the decree of dissolution. Consistent with the temporary order on distributions, the court denied Wife's request for a share of the post-petition distributions from WME and PSC, rejecting her claim that she was entitled to one-half of all payments Husband received that exceeded his contracted $250,000 salary from WME. Also, applying a minority share discount to the community's interests in WME and PSC, the court determined that the fair market value of the community's fifty percent interest in WME was $602,000, and the fair market value of the community's twenty percent interest in PSC was $536,000.[3]  The court ordered Husband to pay Wife $569,000 (minus specified offsets) for her one-half share of the community interest in WME and PSC, $8,000 per month in spousal maintenance for an additional twenty-four months, and continued child support.

¶6        Wife appealed, and in April 2015, this court affirmed in part, vacated in part, and remanded. *Schickner*, 237 Ariz. at 195, 201, ¶¶ 1, 30, 32. We concluded the record was insufficient to determine what portions of the

---

[2]        Wife argued Husband's salary from WME was limited by contract to $250,000 per year, which according to Wife was a reasonable salary for an ophthalmologist; she argued all additional sums Husband received from WME were distributions of profits from community property, as were all distributions from PSC.  Husband presented the testimony of his accountant, Brandon Bull, C.P.A., who testified that Husband receives a "base salary" of $250,000 from WME, and, as a tax-saving measure implemented in early 2010, receives the rest of the compensation for his toil and labor as distributions.  Bull explained Husband had received "exactly the same" compensation in 2010 as in 2009 ($500,000), but elected to change the form of payment from entirely salary to one-half as salary and one-half as distributions to avoid paying Medicare tax on the "non-salary" portion.

[3]        The valuation of the community's interest in PSC is not at issue in this appeal.

WME and PSC distributions were tied to Husband's toil and labor and which, if any, amounts constituted profits derived from community assets. *Id.* at 200-01, ¶¶ 29-30. Accordingly, we vacated the family court's ruling "regarding the character of the WME and PSC distributions" and remanded for a new hearing "to determine the amount of compensation Husband reasonably received from WME and PSC for his toil and labor." *Id.* at 201, ¶ 30. We further noted that "[a]ny distributions Husband received in excess of that reasonable amount of compensation are attributable to the community as profits derived from existing community assets and subject to equitable division."[4] *Id.* (citing Ariz. Rev. Stat. ("A.R.S.") § 25-211(B)(2)).[5]

**¶7**        We also held that, because Husband held a fifty percent interest in WME, the family court had erred in applying a minority share discount in valuing WME, and we vacated the family court's ruling as to WME and remanded for a revaluation of WME and an equitable distribution of the community's interest in WME. *Schickner*, 237 Ariz. at 198-99, ¶¶ 18-19. As for the family court's valuation of PSC, we concluded the application of a minority share discount and valuation of the community interest in PSC at $536,000 were supported by the record. *Id.* at 199, ¶ 20.

**¶8**        In May 2015, before the trial on remand, Wife filed a post-decree petition to modify the spousal maintenance award by extending it an additional thirty-six months. Wife argued that "changed circumstances" existed because Husband still owed her some portion of the equalization payment ordered in the dissolution decree, and she needed funds to launch her new eyewear frame import business. Wife also sought costs and attorneys' fees associated with the motion. Husband responded in part that, over the previous five years, Wife had already received approximately $897,440 in various cash payments, including but not limited to spousal maintenance, child support, and equalization payments; that she had shown no changed circumstances; and that her motion should be characterized as an untimely motion for reconsideration. Husband also sought costs and attorneys' fees associated with responding to the petition.

---

[4]        In so ruling, this court clearly rejected Wife's contention that all amounts Husband received above his $250,000 base salary must be treated as profits derived from existing community assets. *See Schickner*, 237 Ariz. at 199-200, ¶ 25.

[5]        We cite the current version of the statutes unless changes material to our decision have occurred since the relevant date(s).

¶9 The family court then held two separate evidentiary hearings—a hearing on Wife's petition to modify spousal maintenance in January 2016, and a two-day trial on the remand issues in April 2016. At the close of the January 2016 hearing, the family court took the modification request under advisement, and in an order filed February 25, 2016, denied Wife's petition, holding that Wife had "not proven a substantial and continuing change in circumstance that merits a modification of the spousal maintenance order." The court also ordered Wife to pay Husband $25,000 in costs and attorneys' fees incurred in the petition proceedings. Wife moved for a new trial, but the court denied the motion and ordered Wife to pay Husband $800 in costs and attorneys' fees incurred in responding to the motion.

¶10 After trial on the matters on remand, the court held that one hundred percent of the post-decree distributions from WME and PSC were derived from Husband's individual toil and labor, not the community interest in the businesses, and thus were Husband's sole and separate property. Regarding the valuation of WME, the court held that "Husband has proven by clear and convincing evidence the value of the community interest in WME is $650,000," and granted judgment in favor of Wife in the amount of $325,000 for her one-half share of the community interest in WME. The court declined to award attorneys' fees to either side.

¶11 We have jurisdiction over Wife's timely appeal pursuant to A.R.S. § 12-2101(A)(2), (4), (5)(a).

## ANALYSIS

### I. General Standard of Review

¶12 We view the facts and reasonable inferences in the light most favorable to sustaining the family court's rulings, and will affirm if reasonable evidence supports the court's decisions. *See Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987); *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984). Although we defer to the court's factual findings unless clearly erroneous, *Schickner*, 237 Ariz. at 197, ¶ 13 (citing *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 189, ¶ 58 (App. 2008)), we are not bound by its conclusions of law, *Alley v. Stevens*, 209 Ariz. 426, 428, ¶ 6 (App. 2004). "A factual finding is clearly erroneous if no substantial evidence supports it." *Schickner*, 237 Ariz. at 197-98, ¶ 13 (quoting *City of Tucson*, 218 Ariz. at 189, ¶ 58). We also defer to the family court's determinations of witnesses' credibility and of the weight to be given to conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998); *see also O'Hair v. O'Hair*,

109 Ariz. 236, 240 (1973) (stating that the reviewing court will not re-weigh evidence on appeal).

## II. *Character of the Distributions*

**¶13** Wife maintains the distributions exceeded Husband's reasonable compensation and therefore must have included passive income. On this basis, she argues Husband failed to prove by clear and convincing evidence that all post-petition distributions from WME and PCS were the result of Husband's toil and labor, and thus his sole and separate property.

**¶14** We review *de novo* the characterization of property as separate or community. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). "'Property takes its character as separate or community at the time of acquisition and retains that character' throughout the marriage." *Id.* at ¶ 5 (brackets omitted) (quoting *Honnas v. Honnas*, 133 Ariz. 39, 40 (1982)). Further, the community is generally entitled to any profits and gains attributable to community assets. *In re Marriage of Fong*, 121 Ariz. 298, 305 (App. 1978). Property acquired by a spouse after service of a dissolution petition is the separate property of that spouse, but service of a petition for dissolution does not change the status of preexisting community property. A.R.S. § 25-211. Similarly, notwithstanding the filing of a dissolution petition, when "community property [is] used to acquire new property," the new property is community property. A.R.S. § 25-211(B)(2). Because property acquired during marriage is presumed to be community property, Husband must overcome the presumption and establish the separate character of the property by clear and convincing evidence. *Schickner*, 237 Ariz. at 199-200, ¶¶ 22, 27 (citing *Brebaugh v. Deane*, 211 Ariz. 95, 98, ¶¶ 6-7 (App. 2005) (recognizing that "compensation for a spouse's post-dissolution efforts is sole and separate property")).

**¶15** Wife argues the family court based its ruling wholly on Husband's testimony regarding the volume of patients he saw, which she maintains was insufficient by itself to meet the necessary burden of proof. To the extent the family court relied on Husband's testimony, the court did not abuse its discretion. Moreover, as the family court explained, its decision also was based on other evidence, including "Husband's experience, . . . surgeries, collections, and the [Medical Group Management

Association ("MGMA")[6] data relied upon by [Husband's expert John] Pinto[7] and [Wife's expert Lynton Kotzin]." The court also relied in part on the testimony of Brandon Bull, C.P.A.[8] *See supra* at n.2.

**¶16** Wife contended at trial that all distributions above Husband's $250,000 base salary constituted community property, but as the family court found, Wife's argument was not supported even by her own experts, Kotzin and Joel Wakefield. Pinto, Husband's expert, testified that based on Husband's annual number of surgical cases and patient visits, or "professional fee generation," Husband should be in "the 90th to 95th percentile" of ophthalmologists, and Kotzin acknowledged that MGMA data indicated reasonable compensation for a doctor in the 90th percentile would be $631,366. After considering and weighing the testimony of Kotzin and Pinto, the family court found both experts' testimony lacking in certain areas, but specifically found that Kotzin "offered little or no support for his opinion that Husband's reasonable compensation is limited by the MGMA median [of $350,000]," and "made no effort to dispute Pinto's assertion that Husband fits within the 95th percentile." Utilizing MGMA tables, Pinto further testified that, based on profit margin as a percentage of collections, Husband's reasonable compensation should be between $470,000 and $700,000 per year, numbers consistent with Husband's actual cumulative income of $1,565,856 over the three-year post-petition period. Further, Pinto explained that, absent Husband's toil and labor, the community would receive no distributions from PSC. Although the record supports the family court's conclusion that Pinto "downplayed the utility of the MGMA data despite the fact that it generally supported his opinion," Pinto provided a reasonable explanation for his assessment of that data, and the court did not wholly reject Pinto's testimony. Accordingly, we find no abuse of the court's discretion in considering the MGMA data relied on by both sides' experts and in weighing Pinto's testimony more heavily than

---

[6] MGMA is a medical administrators' trade organization that produces market income tables for doctors.

[7] Wife argues the family court erred in allowing Husband's experts Pinto and Steven Koons to provide undisclosed opinions. Wife does not otherwise develop her argument, however, so we will not consider it. *See* ARCAP 13(a)(7)(A)-(B).

[8] Bull testified without objection that reasonable annual compensation for Husband during the relevant time period was approximately $500,000, and all of Husband's income was related to his toil and labor.

Kotzin's. Moreover, to the extent the family court relied on the testimony of Bull, we find no abuse of the court's discretion.

¶17 Wife also argues the family court failed to acknowledge the testimony of her expert, Wakefield, that basing income on productivity (i.e., based on the volume of patients seen) violates federal statutes. Wife suggests that determining the amount of compensation Husband reasonably received from WME and PSC for his toil and labor might violate federal laws governing physician compensation. *See* 42 U.S.C. § 1320a-7b (Anti-Kickback Statute); 42 U.S.C. § 1395nn (Physician Self-Referral Statute or Stark Law). Wife argues federal law bars a contract that ties physician compensation to the number of patients the physician sees, but at issue here is something different, namely, the court's calculation of a reasonable fair market value of Husband's toil and labor. Further, Wakefield never testified that Husband's compensation violated these laws, and he took no position as to the reasonableness of Husband's compensation. In fact, Wakefield acknowledged he had not found any violations in the documents he reviewed concerning WME and PSC.[9]

¶18 On this record, the family court did not err in finding that all distributions made from WME and PSC during pendency of the case were Husband's sole and separate property.

### III. Valuation of the Community Interest in WME

¶19 Wife argues that, although the family court increased the community share valuation of WME to $650,000 from $602,000, the court again erred in valuing the community interest in WME. Wife argues her expert, Kotzin, provided an analysis that accounted for "inflated," or above-market, insider rent paid by WME to its landlord, Rock River Realty, L.L.C. ("Rock River"),[10] and the family court erred by disregarding Kotzin's opinion on the basis that Husband had no authority to control that rent, and instead adopting the highest value in the range of valuation presented by

---

[9] Pinto also testified he did not believe the Stark Law applied to situations such as Husband's, where the "optical clinic is embedded within the practice."

[10] Rock River is owned by Dr. Scott Glesmann, WME's other fifty percent-interest partner, and Wife maintains WME paid Rock River a rent higher than the fair market price. According to Wife and Kotzin, the "inflated" rent devalued WME and, as a result, the community's interest in WME.

Husband's expert, Pinto. She maintains the court effectively applied a de facto minority share discount, an approach we held was error in the prior appeal.

**¶20**      We review for an abuse of discretion the family court's valuation of a business in a divorce proceeding. *Schickner*, 237 Ariz. at 197, ¶ 13 (citing *Roden v. Roden*, 190 Ariz. 407, 411 (App. 1997), *superseded in part by statute on other grounds as recognized in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014)). The family court abuses its discretion if it commits an error of law, reaches a conclusion without considering the evidence, or relies on insubstantial record evidence to support its finding. *Id.* (citing *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007)).

**¶21**      Kotzin opined WME was paying too much in salaries to its two owners. If those salaries were reduced to appropriate levels, Kotzin concluded, the company's profits would be higher, which in turn would increase its value. Kotzin also contended the allegedly above-market rent WME pays to the other partner (Glesmann) likewise reduces its profits and its resulting calculated valuation. The family court, however, found it would be inappropriate to adjust the company's rent as Kotzin advocated for valuation purposes[11] without a factual basis for the proposition that a purchaser of the community's interest in WME could appoint a new manager[12] to reduce the rent.[13] The record supports the court's findings.

---

[11]    The court noted Kotzin's rent adjustment was based in part on a trial exhibit that was not admitted into evidence.

[12]    Kotzin admitted that, as a fifty percent owner, Husband does not own a majority interest in WME, only has the power to block decisions, and does not have the power to manage day-to-day affairs. Further, under WME's Operating Agreement, Dr. Glesmann is named as the initial manager of the company, and Husband does not have the power to appoint a new manager himself because the Operating Agreement requires a majority vote.

[13]    In this court's previous opinion, we recognized "Wife also raised claims regarding 'inflated rents' and excessive salaries paid to family members," but we did not otherwise address these issues except to state that "[a]lthough Husband testified he was unable to alter the terms of WME's rent, which were fixed by contract, the record does not otherwise reflect any substantial limitations on his joint control of WME as a 50% member." *Schickner*, 237 Ariz. at 196, 198, ¶¶ 7, 18.

Further, Kotzin admitted he is not an expert in real estate, and Wife presented no other admissible evidence that WME's existing rent for a comparable medical facility was inflated. Pinto valued the community's fifty percent share of WME as between $517,000 and $650,000. Pinto did not include a minority share discount, and the family court did not abuse its discretion in relying on Pinto's testimony to value the community's fifty percent share in WME at $650,000.[14]

¶22  Finally, citing A.R.S. § 25-318, Wife includes in her valuation argument an argument that she should be awarded a percentage of the *post-decree* distributions received by Husband. Wife does not explain how § 25-318 supports her argument or otherwise develop and provide support for her argument, *see* ARCAP 13(a)(7)(A)-(B), and we find no support for the propriety of such an award.

*IV. Wife's Petition for Modification of Spousal Maintenance*

¶23  Wife next argues the family court committed two errors in denying her petition for modification of spousal maintenance. First, she maintains she proved that changed circumstances warranted extending spousal maintenance. Second, she maintains the court erred in failing to make requested findings of fact and conclusions of law.

*A. Changed Circumstances*

¶24  The goal of spousal maintenance "is to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance." *Schroeder v. Schroeder*, 161 Ariz. 316, 321 (1989). "In most cases of temporary maintenance, the key issue for the parties and the court will be whether that independence will be achieved by a good faith effort." *Id.*

¶25  A spousal maintenance award may be modified "only on a showing of changed circumstances that are substantial and continuing." A.R.S. § 25-327(A). "The burden of proving changed circumstances is on the party seeking modification." *Scott v. Scott*, 121 Ariz. 492, 494 (1979) (citation omitted). "The changed circumstances alleged must be proved by a comparison with the circumstances existing at dissolution." *Richards v. Richards*, 137 Ariz. 225, 226 (App. 1983) (citation omitted).

---

[14] We also reject Wife's argument that the family court should have found Pinto's valuation was not credible because he based the valuation on a hypothetical sale of the business.

¶26        We review for an abuse of discretion the family court's ruling on a petition for modification of spousal maintenance. *Van Dyke v. Steinle*, 183 Ariz. 268, 273 (App. 1995). We review *de novo* questions of law, and will not set aside findings of fact unless clearly erroneous. *Id.*; Ariz. R. Fam. Law P. 82(A) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.").

¶27        In support of her argument that changed circumstances warranted extending the period of spousal maintenance, Wife maintained Husband had not yet paid her the entire equalization payment, and this alleged failure on the part of Husband prevented her from becoming financially independent during the spousal maintenance term in the decree. In denying Wife's petition, however, the family court found that Wife failed to demonstrate a substantial and continuing change in circumstances or that she had made a good faith effort to become financially independent:

> The court has reviewed several hundred pages of exhibits submitted by [Wife] that establish her continuing ability to travel, shop and dine out. The only evidence regarding [Wife's] establishment of an eyewear import business is a name: USA International Trade, LLC. [Wife] acknowledges a business name is all she has and there are no other business records. When questioned about her business activities [Wife] testified that she would not disclose "trade secrets."

> Raising the "trade secret" flag does not excuse the dearth of evidence that could (or should) support [Wife's] claims. She has failed to present *any* document indicating *any* rational attempt at starting a business over the last several years. [Wife] has not disclosed Articles of Incorporation,[15] Bylaws, Annual Reports, minutes of meetings, a budget, a business plan, business bank records, or business tax records.

---

[15]    In her reply brief, Wife claims the family court "wrongly states she failed to submit Articles of Incorporation." She fails to cite to the record for this assertion, however, and the record does not appear to support her assertion. In any event, even if Wife did file Articles of Incorporation, their existence would not require reversal on this record.

She couldn't even identify a specific dollar figure estimate for how much money she needs to start her business in earnest.[16]

[Wife] has received five years (3 pre-decree, 2 post-decree) of monthly payments that were intended to help her get in a position to be self-sufficient and she has nothing to show for it.[17] At this point her business venture is more aptly described as a hobby.

[Husband] is not obligated to financially support [Wife's] hopes, dreams or hobbies. That is not the purpose or intent of a spousal maintenance award. Spousal maintenance is intended to help a spouse get in a position to be financially independent. The testimony and evidence demonstrates that [Wife] is not any closer to fulfilling her dream of owning an import company than she was 3, 4 or 5 years ago.

[Wife] blames [Husband] for this. She asserts that she does not have sufficient cash for startup because she was forced to pay off the marital residence and has been unable to sell it. [Wife] paid off the mortgage on September 19, 2014. [Wife] obtained an appraisal of the marital residence around that time frame which established its value at $346,000.00. She had the marital residence listed for sale at $589,900.00.

---

16 In October 2015, the family court ordered Wife to produce her business records, but she failed to do so, claiming she was "not in a profitability stage of business where there would be records to keep that." Wife also failed to respond to Husband's requests for production of her tax returns for the years 2013, 2014, and 2015. At trial, she testified she had not kept a copy of her 2013 tax return, which she prepared herself; she had requested a copy of her 2013 tax return from the Internal Revenue Service ("IRS") approximately five months earlier, but had not yet received the requested copy; and she had not yet filed her 2014 or 2015 tax returns with the IRS.

17 Wife disputes the court's five-year number, arguing she only received fifty months of court-ordered spousal maintenance payments. The record indicates, however, that Husband made maintenance payments to Wife in the months before the court issued temporary orders.

Various evidence was admitted regarding [Wife's] efforts to sell the marital residence. [Husband] alleges that [Wife] rejected a purchase offer of $505,000.00 and unreasonably tendered a counteroffer of $597,500.00. [Wife] alleges that her list price was in line to other comparable homes listed for sale.

There is no evidence the comparable listings are reasonable. A list price is not always a good indicator of fair market value. No testimony by a realtor or otherwise was offered establishing the other homes for sale are representative of the condition or features of the marital residence. On the other hand, correspondence between the attorneys confirm[s] that appraisals were conducted fixing a fair market value approximately $250,000.00 less than the price set by [Wife].[18] The bottom line is there is no support for [Wife's] actions. The evidence presented indicates she has no desire to sell her home, and has not taken reasonable efforts to do so.

(internal citations omitted).

¶28 The record supports the family court's findings and conclusions. Wife failed to demonstrate a substantial and continuing change in circumstances that prevented her from achieving financial independence, and failed to show she was making any good faith effort toward becoming financially independent. The family court did not abuse its discretion in denying Wife's petition to modify spousal maintenance.

### B. Findings of Fact and Conclusions of Law

¶29 Wife also argues the family court erred in failing to make requested findings of fact and conclusions of law in its order denying her petition for additional spousal maintenance.

¶30 "In all family law proceedings tried upon the facts, the court, if requested before trial, shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to

---

[18] In her reply brief, Wife argues the family court erred in relying "on an outdated three-year old appraisal for a comparison of current market sales price." Because Wife raises this argument for the first time in her reply brief, she has waived the argument. *See Jones v. Burk*, 164 Ariz. 595, 597 (App. 1990).

[Arizona] Rule [of Family Law Procedure] 81." Ariz. R. Fam. Law P. 82(A); *see also Elliott v. Elliott*, 165 Ariz. 128, 134 (App. 1990) (stating that, when a party submits a timely request for findings of fact, the family court must make findings concerning the ultimate facts). Although the family court may adopt a party's proposed findings of fact and conclusions of law, the court should do so only if those findings and conclusions are consistent with those the court reaches independently after proper consideration. *See Elliott*, 165 Ariz. at 134.

**¶31** Both parties filed Proposed Findings of Fact and Conclusions of Law,[19] and in her motion for new trial, Wife argued the family court erred in not adopting her (or Husband's) proposed findings and conclusions, and in failing to address the factors set forth in A.R.S. § 25-319. Wife makes these same arguments on appeal.

**¶32** In denying Wife's motion for new trial, the court explained its reasoning as follows:

> [Wife] filed a Motion for New Trial Pursuant to ARFLP 83. She alleges the court erred by not addressing the A.R.S. §25-319(B) factors in its February 25, 2016 order denying her request for a modification to her spousal maintenance award. The threshold question for modification is whether there are changed circumstances that are substantial and continuing. *See* A.R.S. §25-327(A). In this case the court found that [Wife] failed to make such a showing. As such, there was no need to address the §25-319(B) factors. Further, the court is under no obligation to accept proposed findings of fact and conclusions of law submitted by a party. Each party is entitled to a written, signed order. The court signed its February 25, 2016 order.

**¶33** A comparison between Wife's (and Husband's) proposed findings and the family court's ultimate findings shows numerous differences manifesting the court's independent exercise of judgment. Because the court exercised independent judgment in its fact finding, as is its responsibility, and did not merely rely upon the parties to prepare findings that supported its judgment, *Elliott*, 165 Ariz. at 134; *Nold v. Nold*, 232 Ariz. 270, 273-74, ¶ 14 (App. 2013) (citation omitted), we find no abuse

---

[19] Although both sides filed Proposed Findings of Fact and Conclusions of Law, only Husband specifically requested such findings, citing Rule 82, Ariz. R. Fam. Law P., in a separate filing.

of discretion on this basis. Further, under Rule 82(A), Ariz. R. Fam. Law P., the family court is simply required to "find the facts specially and state separately its conclusions of law thereon." *Accord Miller v. Bd. of Supervisors*, 175 Ariz. 296, 299 (1993) ("A trial court's findings of fact satisfy Arizona law if they are 'pertinent to the issues and comprehensive enough to provide a basis for the decision.'"). There is no requirement that findings of fact or conclusions of law be laid out in a particular manner under Rule 82(A). In this case, the family court made numerous findings of fact, and although Wife may not agree with those findings, the findings are adequate for this court to test the validity of the court's order. *See Miller*, 175 Ariz. at 299 (citations omitted); *see also Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 128, ¶ 13 (App. 2012) (recognizing that whether a court has made sufficient findings of fact and conclusions of law is a mixed question of fact and law that we review *de novo*). The evidence, findings of fact, and conclusions of law are sufficient to sustain the court's determination that Wife failed to prove a substantial and continuing change in circumstances that merited a modification of the spousal maintenance order.[20] Moreover, we agree with the family court that because Wife failed to show changed circumstances, the court was not required to further address the factors outlined in A.R.S. § 25-319(B). *Elliott*, on which Wife relies, is distinguishable on this basis.[21]

### V. Attorneys' Fees

**¶34** Wife argues that, because Husband's financial resources are "vastly greater" than hers, the family court erred in denying her requests for attorneys' fees and in awarding attorneys' fees to Husband in the matters related to the spousal maintenance petition, including Wife's motion for new trial.

**¶35** The family court may award reasonable attorneys' fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S.

---

[20] Also, to the extent that the arguments raised by Wife in her petition for spousal modification may be more properly characterized as a motion for reconsideration, findings of fact and conclusions of law were unnecessary. *See* Ariz. R. Fam. Law P. 82(A).

[21] *See Elliott*, 165 Ariz. at 131-32 (requiring findings of fact when the family court orders spousal maintenance because a mathematical figure alone "does not inform an appellate court of the basis for the court's decision").

§ 25-324(A). We review for an abuse of discretion the family court's decision whether to award attorneys' fees. *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 36 (App. 2011); *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008).

**¶36** The court ordered Wife to pay Husband's costs and attorneys' fees incurred in defending her petition for increased spousal maintenance after finding that Wife had acted unreasonably and failed to support her positions. After receiving Husband's application for attorneys' fees, Wife's objection, and Husband's reply, the court ordered Wife to pay Husband attorneys' fees and costs in the amount of $25,000. In analyzing the § 25-324(A) factors, the court explained its decision to award Husband attorneys' fees in part as follows:

> [Wife's] attempt to extend [Husband's] spousal maintenance obligation wasn't merely unsuccessful, it was unfounded. There was **no** evidence presented — other than [Wife's] self-serving, uncorroborated and unpersuasive testimony — which supported her claims. As a result, [Husband] incurred significant expense for his attorneys to litigate discovery disputes and prepare and defend him in a half-day evidentiary hearing.

(Emphasis in original.) The court also ordered Wife to pay Husband $800 in costs and attorneys' fees incurred in responding to Wife's motion for new trial.

**¶37** Reasonable evidence in the record supports the family court's orders and explanation, as well as the court's denial of Wife's requests for costs and attorneys' fees related to the trial on remand. After reviewing the transcript of the hearing on Wife's petition for spousal maintenance, we agree with the family court that Wife's position regarding spousal maintenance was unreasonable, and although Husband clearly has greater financial resources and current earning capacity than Wife, it is equally clear from the record that Wife is far from impoverished. Accordingly, the family court did not abuse its discretion in awarding attorneys' fees to Husband on Wife's petition to modify spousal maintenance pursuant to A.R.S. § 25-324, and in otherwise denying Wife's requests for fees in the matters litigated on remand.

### VI. Attorneys' Fees on Appeal

**¶38** Both parties request costs and attorneys' fees on appeal pursuant to A.R.S. § 25-324. Husband also asks for sanctions pursuant to

ARCAP 25. Although we agree with Wife that Husband's financial resources are much greater, both sides have substantial financial resources, and Wife's position regarding the spousal maintenance issue continues to be unreasonable. After consideration of these factors in the context of this entire appeal, we decline to award attorneys' fees to either side. As the prevailing party, Husband is entitled to his taxable costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342(A).

## CONCLUSION

¶39        The family court's orders are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA