674 P.2d 907

Rebecca **CARLTON**, Plaintiff/Appellee,

v.

Carol **EMHARDT**, Defendant/Appellant.

No. 2 CA–CIV 4823.

Court of Appeals of Arizona, Division 2.

Dec. 29, 1983.

**354**

Bolding & Zavala by Ed Bolding and Zlaket & Zlaket, P.C. by Thomas A. Zlaket, Tucson, for plaintiff/appellee.

Fish, Briney, Duffield, Miller, Young & Adamson, P.C. by Samuel D. Alfred, Tucson, for defendant/appellant.

## OPINION

HOWARD, Chief Judge.

This is an automobile accident case. Appellant raises two issues on appeal. Did the trial court err in holding she had waived lack of jurisdiction over the person and did it err by granting a new trial? We affirm.

The accident occurred at the intersection of East Mabel Street and North Tyndall Avenue in Tucson. Traffic moving east and west on Mabel was controlled by a stop sign at Tyndall. Appellant was traveling east on Mabel when she ran the stop sign at Tyndall, and collided with the vehicle being driven by appellee which was proceeding south on Tyndall. Appellee suffered personal injuries and property damage as a result of the accident.

According to a passenger in appellee's vehicle, appellant, at the scene, kept apologizing, said she had been through the intersection 100 times, saw the stop sign and did not know why she did not stop. At trial appellant never denied making the statements.

Her theory of defense was twofold. First, she claimed she was not negligent because, although she saw a sign warning that a stop was ahead and was looking for the stop sign, by the time she saw the stop sign, which was partially obscured by vegetation, she did not have time enough to stop. The evidence showed she never applied her brakes.

Her second theory was that appellant was guilty of contributory negligence. The basis for the contributory negligence was the following testimony of appellee:

"Q. I believe you indicated that you saw the Emhardt vehicle for a period of about three seconds before the accident occurred; is that correct?

A. That's what I testified to in my deposition. However, I have been thinking about three seconds, and that is a heck of a long time. I didn't really understand time until I went one, two, three, and I went: That is a long time. So it was a split second.

Q. But under oath, when I took your deposition in May, you said three seconds; correct?

A. Yes, sir.

Q. And you did not leave any skid marks on the pavement as a result of any breaking action that you might have taken; is that correct?

A. No, sir. I didn't.

Q. How far to the—to your right on the—on Mabel Street, west of Mabel, was the Emhardt vehicle when you first saw it?

A. Can you repeat that question?

Q. How far from you was the Emhardt vehicle when you first saw it?

A. It was approaching that intersection, and as I testified, there was a chain-link fence there, and I was the width of probably three/quarters of the width of the front of that house, maybe half way to the intersection, like one house back from the corner of the street, and I saw her coming. She was about—I don't know in feet, but I would say half way in the middle of the other house coming in the other direction. It was kind of like this kind of a thing.

Q. Do you have an opinion how far away she was in feet?

A. I can't tell in feet, I am sorry.

Q. None at all?

A. I am just not familiar with that kind of distance.

Q. You also testified in your deposition that you felt the Emhardt vehicle was traveling at 40 miles per hour?

A. Yes, I did say that.

Q. Is that correct? And that is based upon being able to see it for three seconds, I assume?

\* \* \* \* \* \*

THE WITNESS: When you see someone coming, I think what I probably did—when you see something that is scary or tragic that is approaching.

Q. Let me ask you what is that opinion based on?

A. It was that I was afraid, and it seemed like she was moving very fast, and I think I probably misinterpreted how fast she was moving. I am not really sure. It was just scary to me.

Q. Let me ask you this question: Was that opinion of 40 miles per hour based upon actually seeing the vehicle, or damage done to your vehicle after the accident?

A. It was just from what I saw. Her car moved so fast, that is what made feel that way. It was not from any damage afterward."

Appellant's defense of lack of personal jurisdiction arose from the method of the serving of the summons and complaint. It was served on appellant's father, a lawyer, at his office in Indianapolis. At the time, appellant was a student at the University of Indiana and living in Bloomington. Although the answer stated, as an affirmative defense, lack of jurisdiction, the issue was never raised until the day of trial. Prior to the trial, appellant and appellee had filed a joint pre-trial statement. Lack of personal jurisdiction was never set forth in the pre-trial statement as an issue of law still remaining in the case. Furthermore, appellant filed a third-party complaint against the City of Tucson. This third-party complaint was later dismissed by the court upon motion of the city and without opposition by appellant.

## LACK OF JURISDICTION

There are two reasons why the trial court did not err in holding that appellant had waived her defense of lack of personal jurisdiction. First of all, trial by ambush is a tactic no longer countenanced in Arizona courts. Rule 6(a), Uniform Rules of Practice of the Superior Court of Arizona, 17A A.R.S., requires the joint pretrial statement to contain such contested issues of law as counsel can agree are material or applicable. The joint pretrial statement takes the place of the former practice of having a pretrial conference before the trial judge who entered a pretrial order. Therefore, the law relating to the old practice of pretrial orders applies with equal force to the joint pretrial statement. The pretrial statement controls the subsequent course of the litigation otherwise modified at trial to prevent manifest injustice. Cf. *Norman v. Del Elia,* 111 Ariz. 480, 533 P.2d 537 (1975); *Calderon v. Calderon,* 9 Ariz. App. 538, 454 P.2d 586 (1969); *Wright v. Demeter,* 8 Ariz.App. 65, 442 P.2d 888 (1968); *Loya v. Fong,* 1 Ariz.App. 482, 404 P.2d 826 (1965). The stipulated pretrial statement had the effect of amending the pleading, and thus the defenses of insufficiency of service and lack of personal jurisdiction were waived. Cf. *Ries v. McComb,* 25 Ariz.App. 554, 545 P.2d 65 (1976).

Appellant also waived the jurisdictional issue by filing a third-party complaint

against the City of Tucson. The third-party complaint was filed here almost two years after the filing of the answer. Rule 12(b), Arizona Rules of Civil Procedure, 16 A.R.S., states:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... No defense or objection is waived by being joined with one or more other defenses or objection in a responsive pleading ...."

The question is whether an assertion of a claim for affirmative relief constitutes a waiver of the defense of lack of jurisdiction over the person. The language of Rule 12(b) is of little help since it is reasonably clear that a third-party complaint is not a defense within the meaning of the quoted passage. A frequent source of difficulty with this rule is the modern practice surrounding compulsory counterclaims which must be pleaded in a responsive pleading upon pain of loss. See Rule 13(a), Arizona Rules of Civil Procedure, 16 A.R.S. The federal courts, where our rules originated, have espoused different views. Some hold that the filing of a compulsory counterclaim waives the defense of lack of jurisdiction. See *North Branch Products, Inc. v. Fisher,* 284 F.2d 611 (D.C.Cir.1960); *Beaunit Mills, Inc. v. Industrias Reunidas F. Matarazzo, S.A.,* 23 F.R.D. 654 (S.D.N.Y.1959). Others have held the opposite. See *Dragor Shipping Corporation v. Union Tank Car Company,* 378 F.2d 241 (9th Cir.1967) and cf. *Hasse v. American Photograph Corporation,* 299 F.2d 666 (10th Cir.1962). Wright and Miller state that "[a] sounder approach to the problem is offered by those courts that have held the assertion of a compulsory counterclaim not to constitute a waiver of objections to personal jurisdiction, venue, or service of process even if these defenses are joined with the counterclaim in the answer...." Wright and Miller, Federal Practice and Procedure, § 1397. We agree with Wright and Miller. However, we also agree with the case of *Merz v. Hemmerle,* 90 F.R.D. 566 (E.D.N.Y.1981). There, as here, the assertion of the third-party complaint was not compulsory and therefore acted as a waiver of the defense of lack of jurisdiction over the person.

## THE NEW TRIAL

The trial court granted a new trial on the ground that the verdict was not justified by the weight of the evidence. In so doing it found the following grounds as supporting the granting of a new trial.

"1. The defendant admitted her failure to stop for the stop sign, even though she admitted seeing the stop-ahead sign, and further admitted that she did not apply her brakes or look to the right or left as she entered the intersection.

2. The jury was correctly instructed that if they found that the defendant violated A.R.S. § 28–855, by failing to stop at the stop sign, that the defendant was negligent, and that they should then determine whether the defendant was negligent, and that they then should determine whether the defendant's negligence was a cause of the plaintiff's injuries.

3. That the defendant's negligence was a proximate cause of the plaintiff's injuries was well supported by the evidence.

4. Plaintiff's injuries and causation were well supported by the testimony of Dr. John Madden, an eminently qualified hand surgeon.

5. Though the contributory negligence instructions were given by the Court, the defense theory that the plaintiff should have seen that defendant would run the stop sign and been able to stop herself, was supported by very thin evidence.

6. The plaintiff was not exceeding the posted speed limit and had no stop sign or other control device limiting her entering the intersection of Tyndall with Mabel.

7. The testimony of Cynthia Miller, a passenger in plaintiff's car, was that she did not see the defendant's vehicle com-

ing from her right until plaintiff's vehicle was 'on top of the defendant's car' and the collision resulted.

8. Plaintiff, Rebecca Carlton, testified that she was approaching the Mabel intersection going south on Tyndall and first saw the defendant's vehicle as she realized that defendant was coming through the stop sign. She tried to apply her brakes but could not before the collision resulted. The plaintiff testified that she was about one house back from the corner when she saw defendant's vehicle, though she could not estimate that distance in feet. The plaintiff had said in her deposition in May that she had seen defendant's vehicle about three seconds before the collision but at trial she testified that the estimation had been too long and more likely had been a 'split second'.

9. There was no evidence presented about what, if any, other traffic was at or approaching the intersection that might have allowed or hindered plaintiff's opportunity to avoid the collision.

The jury's disregard of defendant's obvious negligence and apparent finding that the accident and plaintiff's injuries were proximately caused by plaintiff's failure to avoid the accident, was not supported by the evidence. There was no substantial support in the evidence for the jury's verdict for the defendant. . . ."

Appellant contends the granting of a new trial was clearly erroneous. We do not agree. The proposition that the trial court judge has broad discretion in granting a new trial is well settled. *City of Glendale v. Bradshaw,* 114 Ariz. 236, 560 P.2d 420 (1977). An appellate court will not disturb an order granting a new trial unless the probative force of the evidence clearly demonstrates that the decision of the trial judge is a manifest abuse of discretion. *City of Glendale v. Bradshaw,* supra. Of all the grounds upon which a new trial can be granted, Rule 59(a)(8), Arizona Rules of Civil Procedure, 16 A.R.S., is least susceptible to appellate scrutiny. To say that the verdict is not contrary to the evidence requires a review and a weighing of the possible effect of the evidence which is not within the domain of an appellate court. We can view the broad scope of the trial only. Whether the judge's grant was clearly erroneous depended upon whether the evidence supported the verdict or not. But such a determination is uniquely within the province of the trial judge. *City of Glendale v. Bradshaw,* supra.

Appellant has not sustained her burden of demonstrating that the trial court's act was a manifest abuse of discretion. The order of the trial court granting a new trial is affirmed.

HATHAWAY and BIRDSALL, JJ., concur.