947 P.2d 864

**Ann CONANT and John Conant, Plaintiffs–Appellants,**

v.

**John A. WHITNEY, III, Defendant–Appellee.**

No. 1 CA–CV 96–0018.

Court of Appeals of Arizona, Division 1, Department A.

May 22, 1997.

Review Denied Dec. 16, 1997.

Treon, Strick, Lucia & Aguirre by Arthur G. Newman, Jr., William G. Vose, Richard T. Treon, Phoenix, for Plaintiffs–Appellants.

Turley & Swan, P.C. by Christopher J. Bork, Phoenix, for Defendant–Appellee.

## OPINION

NOYES, Judge.

A black bull owned by Defendant Whitney was in the road near Saguaro Lake one night and caused a two-motorcycle crash in which Plaintiffs John and Ann Conant were injured. The Conants' lawsuit alleged that Whitney was negligent, in part, because the bull had escaped from a pasture in which Whitney was not allowed to have bulls. Whitney leased this pasture from the Forest Service and his grazing permit specified that it was to be a "no bulls" pasture. Prior to trial, Whitney stipulated that the grazing permit documents could be admitted into evidence. During jury selection, however, Whitney changed his mind and filed a motion in limine to preclude the "no bulls" evidence. The next day—moments before opening statement—the trial court granted the motion and precluded this evidence, stating that "how the bull ended up there, I don't think is relevant. I think it is unduly prejudicial that it was there in violation of a lease with the Forest Service."

After nine days of trial and more than a day of deliberations, the jury found for Whitney. The court later denied the Conants' motion for new trial. On appeal, the Conants challenge the court's exclusion of the "no bulls" evidence. We conclude that exclusion of this evidence was harmful error requiring reversal. The parties raise two other issues: The Conants seek reinstatement of a posttrial offer of judgment which the trial court struck; Whitney argues that the trial court erred in denying his motion for directed verdict. We affirm the trial court on these two issues.

## I.

Whitney owns a cattle ranch near the junction of the Beeline Highway and the Bush Highway. The Forest Service permits him to graze cattle on 188,000 acres of public land in this area, subject to restrictions. This land includes a 20,000 acre parcel, known as the "Desert Unit," which is north of Saguaro Lake. This is where the bull had been; it was backtracked from the accident scene to a cut fence in the Desert Unit. Whitney's grazing permit and related documents specified that he could have calves and 50 cows in the Desert Unit. The documents all stated, in various ways, that the Desert Unit was to be a "no bulls" pasture.

Whitney denied placing the bull in the Desert Unit or knowing it was there. He claimed that the bull was in the "Dos S Unit" and that it must have wandered out of there and into the Desert Unit. These were fenced pastures. To get from the Dos S Unit to the Desert Unit, the bull would have had to wander 10 to 12 miles and traverse fence lines, cattle guards, and the Beeline Highway. There were underpasses the bull might have used to cross the highway, but they were thought to be gated and locked at all times relevant here.

The Desert Unit is federal land which is open to the public for recreational use. This land is heavily used by dirt bikers and other recreational users, some of whom are vandals. The Forest Service and Whitney knew from experience that recreational users of the Desert Unit routinely cut fences. They also knew that bulls are more likely than cows to wander through a cut fence. One of Whitney's employees testified that Whitney routinely kept bulls in the Desert Unit. Whitney denied this.

Just before the crash, the Conants were riding a motorcycle on the Bush Highway, at night, with John driving. They were riding with some other motorcycles in a staggered, single-file formation. The motorcycle in front of the Conants hit the bull and went down and the Conants hit the other motorcy-

cle and went down. Lawsuits were filed against several defendants. All we discuss here is the Conants' lawsuit against Whitney.

After the jury returned a defense verdict, the Conants served Whitney with a $799,-999.99 offer of judgment pursuant to Rule 68, Arizona Rules of Civil Procedure. The trial court granted Whitney's motion to strike the offer of judgment. The Conants moved for a new trial, which the trial court denied. The Conants appealed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) and (F) (1994).

## II.

■ The trial court has broad discretion in determining the admissibility of evidence at trial. *West Pinal Family Health Center, Inc. v. McBryde,* 162 Ariz. 546, 550, 785 P.2d 66, 70 (App.1989). We will not disturb the exclusion of evidence unless the trial court abused its discretion or incorrectly applied the law. *Id.* We view the excluded evidence in the light most favorable to its proponent. *State v. Castro,* 163 Ariz. 465, 473, 788 P.2d 1216, 1224 (App.1989) (stating that appellate court looks at excluded evidence in light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect) (citations omitted).

Whitney asserts that the "no bulls" evidence was properly excluded under Rule 403, Arizona Rules of Evidence, which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The trial court arguably never conducted a rule 403 analysis; it seemed to find that the "no bulls" evidence was irrelevant. If that was the case, the ruling was erroneous for that reason alone. During trial, however, the trial court was asked, several times, to reconsider its exclusion of the "no bulls" evidence. In affirming its ruling, the trial court made various statements, some of which suggest a finding that the excluded evidence was relevant. We will therefore proceed as though

the trial court found that it was relevant. Whitney's brief advises that "Whitney does not dispute that the evidence had some relevance to the Conants' case."

Whitney argues that the "no bulls" evidence had minimal relevance because the Forest Service was concerned with mature bulls escaping from the Desert Unit and accosting people at Butcher Jones Beach; it was not concerned with young bulls such as this one escaping and being hit by vehicles. (Whitney's argument here is that young bulls presented no more risk in this regard than cattle in general. Both the Forest Service and Whitney were concerned about cattle being hit by vehicles and each had done much to protect the public from this danger.) The Conants argue that, as their expert testified, this young bull had "more hormones than brains" and was much more likely to wander than cows or calves. Whitney argues that debating such issues would have wasted time. We think it likely that more time was wasted by letting the Conants go into everything *except* the "no bulls" evidence.

■ Whitney argues that, because he did not intentionally "place" the bull in the Desert Unit and because his grazing permit said nothing about bulls which were "accidentally" in the Desert Unit, the "no bulls" evidence was of minimal relevance. This argument is flawed if only because it resolves a factual dispute about how the bull got into the Desert Unit. Only if Whitney's testimony is accepted and the contrary inferences rejected can it be said that the bull was accidentally in the Desert Unit. The trial court cannot resolve such factual issues; the jury must do so.

To support the argument that the "no bulls" evidence was unfairly prejudicial, Whitney's brief asserts that "a juror with a particular bent toward patriotism or law and order might find it reprehensible that someone would break an agreement with the federal government." This is a very weak argument for exclusion of relevant evidence on Rule 403 "unfair prejudice" grounds. We have a possible grazing permit violation here; one bull in a 20,000 acre pasture. There is no reasonable danger of "unfair prejudice" from such evidence in this case.

Whitney said that he had not placed this bull in the Desert Unit. Because of this testimony, the jury would probably not find Whitney in breach of his grazing permit unless it found that he was lying about how the bull got into the Desert Unit. If Whitney was lying, that is reprehensible, but it is no reason to suppress relevant evidence. We make no inference about what the truth is here; we merely conclude that Whitney showed no good reason to exclude the "no bulls" evidence.

The Conants contend that the "no bulls" evidence was relevant and material for several reasons: To show that their claim that Whitney should have kept the bull out of the Desert Unit imposed no burden on him he did not already have under the grazing permit; to show that Whitney knew that keeping bulls out of the Desert Unit was necessary for reasons of public safety; to avoid misleading the jury into believing that the Forest Service approved of bulls being in the Desert Unit; to rebut the inference that the Forest Service was at fault for not prohibiting bulls in the Desert Unit; and to define Whitney's contractual undertaking and responsibility in relation to that of the Forest Service. We agree that the "no bulls" evidence was both relevant and material in this case. We also find that exclusion of this evidence unfairly simplified Whitney's defense.

In his opening statement, Whitney's counsel told the jury: "The evidence will show we took special steps to protect the public, which included the Conants." A few moments later, he said:

> Mr. Whitney was not at fault, the County is at fault, even the Forest Service is at fault. The Forest Service had the obligation to enforce the area.
>
> . . . .
>
> And so I think that you'll see that even the Forest Service has a responsibility in this case. But not Mr. Whitney. That we had plenty of people that may have been at fault here, but the evidence will show that my client lived up to his obligation as a rancher in an area involving people going in the area where he has no control over it.

Because a last-minute motion in limine was granted, Whitney was able to defend the case as if he had a right to have bulls in the Desert Unit and as if he had "lived up to his obligation" out there. The jury was misled by not hearing all the relevant evidence on these issues.

We conclude as follows: The "no bulls" evidence was relevant to plaintiffs' case; plaintiffs were unfairly prejudiced by its exclusion; the jury was misled by its exclusion; Whitney would not have been unfairly prejudiced by its admission; and the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice or by any other consideration stated in Rule 403. Therefore, exclusion of this evidence on Rule 403 grounds was an abuse of discretion.

### III.

In the joint pretrial statement, Whitney stipulated that the documents with the "no bulls" restriction were admissible. Whitney's motion in limine was, in effect, a last-minute retraction of that stipulation. As we have stated, this motion was filed during voir dire and it was granted just before opening statement. The Conants argue that Whitney was bound by this stipulation in the pretrial statement and should not have been relieved from it without showing that relief was necessary to prevent manifest injustice. *Carlton v. Emhardt*, 138 Ariz. 353, 355, 674 P.2d 907, 909 (App.1983) (pretrial statement controls the subsequent course of litigation unless otherwise modified at trial to prevent manifest injustice).

Whitney does not dispute the need to show manifest injustice and he does not claim that he showed any such injustice; rather, he argues that the Conants waived the issue by first raising it in the motion for new trial. We agree. *Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.") (citations omitted); *see also Ruck Corp. v. Woudenberg*, 125 Ariz. 519, 522–23, 611 P.2d 106, 109–10 (App.1980)

(arguments regarding award of attorneys' fees and failure to join indispensable party were too late and waived when first raised in a motion for new trial); *Watson Constr. Co. v. Amfac Mortgage Corp.*, 124 Ariz. 570, 582, 606 P.2d 421, 433 (App.1979) (objection to improper jury argument was waived when not raised until motion for new trial).

The Conants rely on *Gordon v. Liguori,* 182 Ariz. 232, 895 P.2d 523 (App.1995). In that case, however, the issue on appeal was argued prior to trial and the court had made a tentative ruling on it. *Id.* at 237, 895 P.2d at 528. Here, the issue first appeared in the motion for new trial.

## IV.

After the jury returned a defense verdict, the Conants served an offer of judgment on Whitney for $799,999.99. The trial court granted Whitney's motion to strike the offer as untimely, moot, and improper. Rule 68(a), Arizona Rules of Civil Procedure, provides that, "At any time more than 30 days before the trial begins, any party may serve upon the adverse party an offer to allow judgment to be entered in the action in accordance with the terms and conditions specified in the offer, plus costs then accrued."

■ Obviously, a post-judgment offer of judgment is not made "before the trial begins." But the Conants argue that the offer should be viewed in relation to the new trial they will be granted if they prevail on appeal, which they have now done. We conclude that Rule 68 does not allow a party to file an offer of judgment while a case is on appeal from a final judgment.

Although one purpose of Rule 68 is to encourage settlements, a post-judgment appellee such as Whitney is entitled to rely on a presumption that the appealed-from judgment is correct. *Chase v. State Farm Mut. Auto. Ins. Co.*, 131 Ariz. 461, 463, 641 P.2d 1305, 1307, n. 2 (App.1982). A post-trial offer of judgment puts more pressure on appellee than appellant. Having already lost at trial, appellant has less to lose on appeal than appellee. A postjudgment offer of judgment injects a new feature into Rule 68; one

which will have to be written into the Rule before we see it there.

The Conants assert that courts from other jurisdictions have permitted post-verdict offers of judgment. The cited cases, however, all involve a pending new trial or a bifurcated trial. *See Davis v. Abbuhl,* 461 A.2d 473 (D.C.1983) (motion for new trial had been granted); *Allianz Ins. Co. v. Gagnon,* 109 Nev. 990, 860 P.2d 720 (1993) (offer of judgment allowed after liability trial but before trial on damages). When the Conants filed their offer of judgment, a final judgment existed. The Conants, in effect, asked the trial court to amend Rule 68 to allow an offer of judgment *after* judgment had been entered. We affirm the trial court's refusal to do so.

## V.

At trial, Whitney moved for a directed verdict and argued that, under *Carrow Co. v. Lusby,* 167 Ariz. 18, 804 P.2d 747 (1990), neither his failure to keep the bull out of the Desert Unit nor his failure to maintain fences was a breach of his duty to the Conants. The trial court denied this motion and Whitney challenges this ruling as a cross-issue on appeal.

In *Carrow*, a heifer owned by Carrow was hit by a motorcyclist on a public highway in open range. Carrow and the motorcyclist sued each other. The trial court and the court of appeals concluded that Carrow had no duty to keep cattle off of the public highway. The supreme court reversed, holding that livestock owners owe a duty of ordinary care to motorists on public highways. *Id.* at 25, 804 P.2d at 754. The court noted, however, "that in open range territory, the mere failure to prevent one's cattle from entering the highway, by erecting fences or otherwise, does not constitute conduct falling below the standard of care required of livestock owners." *Id.* Whitney argues that the court erred in failing to rule that Whitney fit *Carrow's* "or otherwise" dictum.

■ In *Carrow*, the supreme court did not decide the breach of duty issue; it remanded for further proceedings. The jury decides the breach issue unless reasonable minds

cannot differ on whether defendant acted as an ordinarily careful person under the circumstances. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 357–58, 706 P.2d 364, 369–70 (1985) (citations omitted). In this case, reasonable minds might differ. For one thing, the Desert Unit was not open range; it was fenced. In his lease with the Forest Service, Whitney assumed responsibility for maintaining the Desert Unit fence. Having assumed a duty, Whitney is liable for harm caused by his failure to exercise reasonable care in discharging that duty. *Taylor v. Roosevelt Irrigation Dist.*, 72 Ariz. 160, 165, 232 P.2d 107, 110 (1951). The facts in this case are not so clear that the breach of duty issue can be decided by the court as a matter of law.

Reversed and remanded for new trial.

FIDEL and RYAN, JJ., concur.