NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOSHUA JOSEPH RECCHIA, *Appellant*.

No. 1 CA-CR 13-0475
FILED 2-17-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-141579-003
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza Ybarra
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Cory Engle
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Donn Kessler joined.

**C A T T A N I**, Judge:

¶1            Joshua Joseph Recchia appeals his convictions of armed robbery and kidnapping and the resulting sentences.  Recchia argues that (1) the superior court abused its discretion by denying his motions for mistrial and new trial based on the State's failure to disclose a supplemental police report and rebuttal witness, and (2) prosecutorial misconduct denied him a fair trial.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶2            On August 1, 2012, 21-year-old Anthony T. ("the victim") received a text message he thought was from his ex-girlfriend asking him to pick her up at an apartment in northwest Phoenix.  He drove to the apartment complex in his father's truck.  When he went inside the apartment, he was accosted at gunpoint by Manuel Garza and eight other people, including Recchia.

¶3            The group of assailants pushed the victim to the ground and searched his pockets, taking his wallet, keys, cell phone, hat, and shoes.  Overall, they took $30 in cash, debit and credit cards, and a gift card, as well as the victim's driver's license, student ID and Blockbuster card.  Garza told the victim that he would be hurt if he "did anything stupid," and that both he and his family would be harmed if he reported the incident to the police.  Garza demanded that the victim tell them his bank account PIN, and one of the assailants later attempted to cash a $1000 check in the victim's name.

¶4            The victim was held face-down in a bathtub for approximately an hour and a half.  Recchia yelled at him and threatened him with a knife during that time.  Eventually, one of the assailants forced the victim at knifepoint to drive the truck to a smoke shop, where he was forced out of the vehicle.  After the assailant and a female passenger drove away, the victim called the police.

¶5            The police found the victim's truck in the parking lot of the apartment complex where he had been assaulted and robbed.  Recchia's fingerprint was discovered on the truck's window.  Within days of the incident, the victim identified Recchia in a photo lineup as one of the men who had threatened him with a knife while he was being robbed.

---

[1]      We view the evidence in the light most favorable to sustaining the convictions and resolve all reasonable inferences against defendant.  *State v. Karr*, 221 Ariz. 319, 320, ¶ 2, 212 P.3d 11, 12 (App. 2008).

**¶6** A jury found Recchia guilty of armed robbery and kidnapping, and the superior court sentenced him to concurrent, aggravated 11-year terms of imprisonment for the two crimes. Recchia timely appealed from the judgment and sentences. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031 and -4033.[2]

## DISCUSSION

### I. Failure to Disclose/Discovery Violations.

### A. Supplemental Police Report.

**¶7** Recchia argues that the State failed to timely disclose part of the police report (Supplement Nine) relating to the crime and that the superior court should have granted a mistrial on that basis.[3] Recchia contends that the State's failure to timely disclose this supplement, which apparently included the police report's only mention of a statement by the victim that at least one of the assailants was white, "eviscerat[ed]" Recchia's defense, which was premised in part on the victim's asserted failure to identify any assailant as white.

**¶8** During cross-examination, Recchia's counsel asked Phoenix Police Detective Gonzalez whether, prior to identifying Recchia in the photo lineup, the victim had stated that any of the assailants were white. Detective Gonzalez responded that the victim had done so, as noted in Supplement Nine to the police report.

**¶9** Recchia's counsel asserted that Supplement Nine had never been disclosed; the prosecutor in turn avowed that all police reports in his possession had been provided to defense counsel. Without ruling on whether there had been a disclosure violation, the court granted a recess to

[2] Absent material revisions after the relevant date, we cite a statute's current version.

[3] We note that the record on appeal does not contain a copy of Supplement Nine. An appellant is responsible to ensure that the record is complete. *State v. Lujan*, 136 Ariz. 326, 328, 666 P.2d 71, 73 (1983); *State v. Kerr*, 142 Ariz. 426, 430, 690 P.2d 145, 149 (App. 1984). Generally, we presume that missing portions of the record support the superior court's actions. *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982). Here, however, the parties do not dispute the substance of the supplement, but rather the effect of the alleged disclosure violation.

give defense counsel an opportunity to review the supplement. After doing so, Recchia's counsel stated he was ready to go forward "right now," but reserved the right to recall the witness the next day. The court agreed, and counsel continued to cross-examine Detective Gonzalez. He continued cross-examination the following morning.

¶10 Later that day, Recchia moved to dismiss the case with prejudice. Counsel argued that, because he was not aware of the victim's statements as detailed in Supplement Nine, he had told the jury during his opening statement that the victim had never identified any of his assailants as being white and that, as a consequence, the jury would now view counsel as "a liar." The court denied the motion, reasoning that giving counsel an opportunity to review the supplement before continuing cross-examination was an appropriate remedy.

¶11 The superior court has broad discretion to determine whether to impose a sanction for late disclosure as well as what sanction is appropriate under the circumstances, and we therefore review its ruling for an abuse of discretion. *State v. Moody*, 208 Ariz. 424, 454, ¶ 114, 94 P.3d 1119, 1149 (2004). Because the superior court is in the best position to assess what damage, if any, has been done by the late disclosure, we defer to that court's perspective and judgment concerning the severity of the sanction to impose. *State v. Meza,* 203 Ariz. 50, 55, ¶ 19, 50 P.3d 407, 412 (App. 2002).

¶12 Recchia argues that merely allowing time to review the supplement was an inadequate remedy because the alleged disclosure violation affected his trial strategy, as evidenced by his counsel's opening statement. But there was no dispute that the victim had identified Recchia in a photo lineup within days of the incident, and in light of this pretrial identification, whether the victim initially described one of the assailants as being white was relatively insignificant. Moreover, one of Recchia's primary defenses was that he was also a captive of Manuel Garza, a defense that necessarily acknowledged Recchia's presence during the incident and aligned with the undisputed fact that Recchia's fingerprint was found on the victim's vehicle. Accordingly, focusing on the victim's failure to specify the race of all of his assailants would not have been a compelling strategy even without the information in the supplemental report.

¶13 Furthermore, the alleged disclosure violation did not impair or call into question Recchia's primary arguments about his role in the robbery and kidnapping, and the victim's ability to detail what happened. Recchia was able to question the victim's perception of events, highlighting that the victim misidentified one of the other assailants and failed to note

4

Recchia's prominent visible tattoos. Similarly, Recchia's counsel vigorously cross-examined Detective Gonzalez regarding the accuracy and consistency of the victim's statements to police as compared to his trial testimony, as well as the victim's perception of events under duress, including his description of the assailants. Accordingly, Recchia has not established that he was unfairly prejudiced by the alleged disclosure violation, and the superior court did not abuse its discretion by denying the motion to dismiss with prejudice based on the alleged late disclosure. *See Moody*, 208 Ariz. at 454, ¶ 114, 94 P.3d at 1149.

### B.     Rebuttal Witness.

**¶14**        Recchia next argues that the superior court erred by denying his motions for mistrial or for a new trial based on the State's alleged nondisclosure of co-conspirator Pete Hernandez as a rebuttal witness. The victim identified Hernandez in a photo lineup as the man who had forced him at knifepoint to drive to the smoke shop. Hernandez was charged for the same crime under a different case number, by a different prosecutor.

**¶15**        In the instant case, the State's initial disclosure statement did not list Hernandez by name but identified "[a]ny individual named or referred to in the . . . police report" as a potential witness either in its case-in-chief or in rebuttal. On the second day of trial, the prosecutor raised the possibility that Hernandez might be called as a rebuttal witness to counter a defense claim that Recchia was not a willing participant in the crime.

**¶16**        The State did not call Hernandez as a witness during its case-in-chief, but sought to call him in rebuttal after Recchia presented witnesses to support his claim that he had been kidnapped. The prosecutor notified the court and Recchia's counsel that Hernandez had not yet signed a proposed plea agreement but that an agreement would be in place before Hernandez testified. Recchia's counsel asked if the person who would be testifying was "Pete Hernandez, the codefendant," and requested an opportunity to review Hernandez's plea agreement. Without formally objecting, counsel noted that Hernandez was not listed as a witness for the State.

**¶17**        The next morning, Recchia's counsel moved to limit the scope of Hernandez's rebuttal testimony, but did not seek to preclude his testimony based on surprise or because of an alleged disclosure violation. The superior court, finding that Recchia had raised a kidnapping defense in his case-in-chief, allowed the State to call Detective Gonzalez and

Hernandez as rebuttal witnesses. The court also gave Recchia's counsel additional time to interview Hernandez and review his plea agreement.

¶18        Hernandez testified that, to his knowledge, Recchia had participated in the robbery voluntarily, not due to any threat. Hernandez explained that, at Garza's direction, he, Recchia, and another man, all armed with knives, had surrounded the victim as planned. Recchia helped guard the victim, holding a knife to his back while he was in the bathtub. Hernandez stated that Garza did not threaten any of them to secure their participation, and that Recchia was free to leave the apartment. Hernandez also testified that he had told Detective Gonzalez that Recchia had not been held against his will.

¶19        Although Recchia's counsel made hearsay and scope objections to Hernandez's testimony, counsel did not ask to strike the testimony as untimely disclosed until after the jury returned guilty verdicts. At a hearing on Recchia's motions for reconsideration and to consider the impact of the failure to disclose Hernandez as a witness prior to the plea deadline, Recchia's counsel claimed allowing Hernandez to testify in rebuttal amounted to "trial by ambush" in that Hernandez had never been formally disclosed as a witness, counsel had not expected Hernandez to testify, and counsel's trial strategy had been affected by this "surprise." The superior court denied both of Recchia's motions, noting that the State's initial disclosure statement referred to "[a]ny statements of the defendant or of any co-conspirators mentioned or contained in the police reports or other disclosed materials." The court observed that, although more specific disclosure would have been preferable, the disclosure was adequate under the circumstances because the State had disclosed Hernandez's statements to Detective Gonzalez, and Recchia knew Hernandez had also been charged as a result of the incident. Recchia subsequently asserted the same argument in a motion for new trial, which was also denied.

¶20        Rule 15.1 of the Arizona Rules of Criminal Procedure requires that, as part of pre-trial discovery, a prosecutor supply a defendant with the names and relevant written or recorded statements of all persons the prosecution intends to call in its case-in-chief. Here, the prosecutor did not intend to call Hernandez in his case-in-chief. Nonetheless, on the second day of trial, the prosecutor discussed Hernandez as a potential rebuttal witness, even before Hernandez had entered into a plea agreement, and the prosecutor kept the parties informed of Hernandez's pending plea negotiations.

¶21 Recchia's counsel never claimed to be unaware of Hernandez's identity or role in the robbery. Although Hernandez was not a co-defendant and was not specifically named in the State's disclosure document, defense counsel knew of Hernandez's involvement in the charged offenses, and of his interview with the case agent, as detailed in Detective Gonzalez's report. While the better practice would have been to include Hernandez's name in the disclosure document, the State's disclosure of "[a]ny individual named or referred to in the . . . police report" as a witness and "[a]ny statements of . . . any co-conspirators mentioned or contained in the police reports" as other evidence gave Recchia sufficient notice that Hernandez might be called as a witness. *See State v. Armstrong*, 208 Ariz. 345, 353, ¶¶ 38–39, 93 P.3d 1061, 1069 (2004) (holding that the State did not violate Rule 15.1 when it made a belated disclosure as a result of the witness's last minute decision to enter into a plea agreement in exchange for her testimony).

¶22 Additionally, even assuming the State's failure to specify Hernandez by name amounted to a disclosure violation, the superior court appropriately addressed the alleged violation by granting defense counsel an opportunity to review the police reports and plea agreement and to interview Hernandez. The purpose of Rule 15.1 is "to give full notification of each side's case-in-chief so as to avoid unnecessary delay and surprise at trial." *Armstrong*, 208 Ariz. at 353, ¶ 38, 93 P.3d at 1069 (citation omitted). As the Arizona Supreme Court has noted, the superior court "should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible, since the Rules of Criminal Procedure are designed to implement, and not to impede, the fair and speedy determination of cases." *Id.* at 353–54 ¶¶ 40–41, 93 P.3d at 1069–70.

¶23 Here, there is no indication that the alleged nondisclosure caused surprise such that Recchia's counsel was unable to mount a defense. We note that, beyond the opportunity granted by the court, defense counsel never sought additional time to interview Hernandez or review the plea agreement. Moreover, defense counsel thoroughly cross-examined Hernandez about discrepancies between his testimony and his prior statements to Detective Gonzalez, including the fact that Hernandez initially lied to Detective Gonzalez about his own involvement in the offenses and the fact that Hernandez only agreed to testify after receiving a favorable plea agreement. Recchia's counsel also effectively cross-examined Detective Gonzalez about inconsistencies between Hernandez's trial testimony and his prior statements. Counsel was thus able to emphasize that Hernandez had not provided many of the details he related at trial until after he obtained a plea agreement. Because Recchia knew the

substance of Hernandez's prior statements to police, he has not shown surprise or prejudice stemming from the alleged untimely disclosure.

**¶24** The remedies imposed by the superior court following Hernandez's disclosure as a rebuttal witness were appropriate under the circumstances. Accordingly, the court did not err by denying Recchia's requests for a mistrial or for new trial.

## II. Prosecutorial Misconduct.

**¶25** Recchia alleges several instances of prosecutorial misconduct during closing argument. He claims that the prosecutor improperly reserved the bulk of his argument for rebuttal closing, improperly reserving matters that should have been presented in the initial closing argument. He also maintains that the prosecutor improperly maligned defense counsel, and that the prosecutor's actions ultimately deprived him of a fair trial. Because Recchia did not raise these objections before the superior court, we review only for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20, 115 P.3d 601, 607 (2005).

**¶26** A prosecutor's comments constitute misconduct if the comments called to the jurors' attention matters that should not have been considered and the jurors probably were influenced by those remarks. *State v. Newell*, 212 Ariz. 389, 402, ¶ 60, 132 P.3d 833, 846 (2006). To warrant reversal, a defendant must show that the offending comments, when considered within the proceeding as a whole, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citation omitted).

**¶27** Recchia's claim of misconduct based on the prosecutor's choice to expend more time in rebuttal argument fails. Recchia cites no rule or other authority that prescribes a length of time for either an initial or rebuttal closing statement in a criminal trial, and the civil cases on which he relies, *Carlton v. Emhardt*, 138 Ariz. 353, 674 P.2d 907 (App. 1983), and *Hubbard v. Matlock*, 24 Ariz. App. 554, 540 P.2d 173 (1975), are unavailing. *Emhardt* discusses how a joint pretrial statement controls the course of civil litigation, thereby avoiding trial by "ambush." 138 Ariz. at 355, 674 P.2d at 909. And *Hubbard* simply establishes that the *scope* of a plaintiff's rebuttal is limited to arguments raised in the defendant's closing. 24 Ariz. App. at 556, 540 P.2d at 175. Here, although the prosecutor's rebuttal closing was longer than the brief initial closing argument, the rebuttal appropriately addressed issues raised in defense counsel's closing arguments, such as conflicts in the victim's testimony, Hernandez's plea agreement as

motivation to testify in the State's favor, and the police's failure to investigate Recchia's claim that he was also kidnapped.

¶28 Recchia also argues that the prosecutor's references to Hernandez's testimony in rebuttal closing were not proper rebuttal, but rather "substantive, direct evidence" saved until after the defense closing for strategic reasons. We note that the jury was instructed that the arguments of counsel are not "evidence," and we presume the jury followed that instruction. *State v. Velazquez*, 216 Ariz. 300, 312 ¶ 50, 166 P.3d 91, 103 (2007). More importantly, the prosecutor's references to Hernandez's testimony being consistent with his pre-trial (and pre-plea agreement) statements were in direct response to defense counsel's attempts to depict Hernandez as the State's "puppet," who had tailored his testimony in exchange for a favorable plea agreement. The prosecutor's comments were therefore within the proper scope of rebuttal. *See State v. Hernandez,* 170 Ariz. 301, 307–08, 823 P.2d 1309, 1315–16 (App. 1991).

¶29 Recchia next argues that the prosecutor improperly impugned defense counsel by calling him "juvenile" and by stating that counsel was leading jurors astray or "down the garden path." Prosecutors are allowed "wide latitude" during closing arguments, *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000), although it is improper to impugn the integrity or honesty of opposing counsel. *Newell*, 212 Ariz. at 403, ¶ 66, 132 P.3d 847. Here, the prosecutor's comments—although perhaps not artfully stated—were not personal attacks on defense counsel's integrity, but rather were responsive to defense counsel's repeated references to Hernandez as the State's "puppet," as well as to defense arguments the prosecutor characterized as "red herrings." Viewed in context, the prosecutor's comments were within the range of permissible argument.

¶30 Finally, Recchia argues that the prosecutor improperly appealed to "the passions, fears and vulnerabilities of the jury" to obtain a verdict. *See, e.g., State v. Hughes*, 193 Ariz. 72, 88, ¶ 70, 969 P.2d 1184, 1200 (1998) (noting that it is improper argument to appeal to "fear"). The prosecutor ended his rebuttal by admonishing the jurors, "Don't be an accomplice to the defendant's actions" by accepting Recchia's position that he, too, was a victim. While the prosecutor's statement was arguably improper, it was a single statement in an otherwise appropriate argument, and thus did not "permeate[] the entire atmosphere of the trial" and thereby deprive Recchia of a fair trial. *See id.* at 79, ¶ 26, 969 P.2d at 1191 (citation omitted). Accordingly, Recchia has not established error, much less the fundamental error warranting reversal. *See Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607.

**CONCLUSION**

¶31 Recchia's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama