NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ROBERT KENNETH BARNES, *Petitioner/Appellant*,

*v.*

TIFFANY MARIE RICHARDSON, *Respondent/Appellee.*

No. 1 CA-CV 25-0545 FC

FILED 06-23-2026

Appeal from the Superior Court in Maricopa County
No. FC2019-095344, FC2021-091254
The Honorable Lisa S. Wahlin, Judge (*Ret.*)
The Honorable Janette Corral, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Law Office of Ronald L. Kossack, Chandler
By Ronald L. Kossack
*Co-Counsel for Petitioner/Appellant*

Stanley David Murray, Attorney at Law, Scottsdale
By Stanley David Murray
*Co-Counsel for Petitioner/Appellant*

Genesis Legal Group, Gilbert
By Debora M. Levine, Kevin Jensen
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision in which Presiding Judge Daniel J. Kiley and Judge Cynthia J. Bailey joined.

---

**W I L L I A M S**, Judge:

¶1        Robert Kenneth Barnes ("Father") appeals the superior court's child support order. For the following reasons, we affirm in part, vacate in part, and remand for reconsideration of child support.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Tiffany Marie Richardson ("Mother") never married but share two minor children, Susan (a pseudonym), born in 2011, and Sally (a pseudonym), born in 2013. Both children were born in Washington. The parties obtained an order there in 2017 establishing child support for Susan ("the Washington order"), under which Father paid Mother $3,500 per month. Sally was not included in the order because Father had not yet established paternity as to her. However, Father contends that he agreed to pay Mother $3,500 per month—a substantial upward deviation of the Washington child support guidelines—because the parties had agreed the amount "included both children."

¶3        After the Washington order was issued, Mother moved to Arizona with the children. In July 2019, Father petitioned to establish paternity, legal decision-making, parenting time, and child support for Sally in Arizona. In the parties' joint pretrial statement, Father maintained that the Washington child support amount "reflects an agreed upon upward deviation for **both** of the parties' children which far exceeds the financial needs of **both** children," but that the Arizona court lacked "jurisdiction to modify the child support order in Washington" because the order had not yet been registered in Arizona. Mother's position on child support was merely a statement of her agreement that Arizona did "not have jurisdiction over Father at [the] time for child support." Ultimately, the parties entered into a consent decree in February 2021, which the court approved, establishing paternity, parenting time, and legal decision-making, but stipulated to no child support order because the parties apparently believed only Washington had jurisdiction to address child support.

2

¶4            Father then moved to Arizona. In March 2021, he registered the Washington order in Arizona and subsequently moved to modify child support for both children through separate petitions. As relevant here, Father petitioned to modify child support for Sally in December 2021. In doing so, Father reasserted that he had agreed to the upward deviation in Washington "[i]n order to support both children," but he also acknowledged that "[t]here is no child support order for [Sally]."

¶5            In August 2023, while Father's petitions were still pending, he requested temporary child support orders for both children as part of an emergency motion for temporary legal decision-making and parenting time, arguing that child support should be ordered according to the Arizona Child Support Guidelines, A.R.S. § 25-320 app. ("Guidelines"). The court ordered Father to pay Mother temporary child support for Sally pursuant to the Guidelines beginning November 1, 2023.

¶6            The court held an evidentiary hearing on Father's petitions in February 2025. In his pretrial statement, Father argued that "[a]ny retroactive application of the [Guidelines] should be effective as of January 1, 2022, the first day of the month following [the] service" of his petition to modify child support for Sally. He also argued that he should be given credit for "overpayment" of the difference between the Washington child support amount and the Guidelines amount for both children from January 2022 through October 2023, covering the period between service of his modification petition and the temporary child support orders, which imposed the Guidelines amount. Mother argued that "[c]hild support should be established beginning February 1, 2022" and that "Father did not make any payments of support for . . . [Sally] until November 2023," when the temporary orders began. She also argued that she was "entitled to an award of past support for thirty-six (36) months immediately preceding service of the Petition," and that she was therefore "entitled to child support from January 2019 through January 2022."

¶7            At the hearing, Father testified that the Washington order was meant to cover both children, and introduced an affidavit from the Washington case in which Mother averred that the Washington order was agreed to "with the understanding that [Father] and [she] had two children together," that she "understood" the Washington order "covered both children," and that "[b]ecause paternity was not established, [Sally] could not be included in the [Washington] order."

¶8            In her testimony, Mother countered that child support had never been established for Sally prior to the temporary order. When cross-

examined about the Washington affidavit, Mother testified that the affidavit indicated that the support amount covered both children "[i]n the state of Washington, but not in the state of Arizona," and reiterated that there has never been a child support order for Sally.

¶9 The superior court issued its order in March 2025 wherein it found that "Father did not make any payments for the support of [Sally] until November 2023." Citing A.R.S. § 25-320(C), the court ordered Father to pay Mother $36,225 in past child support for the period of February 1, 2022 (the first day of the month following service of Father's modification petition) through October 31, 2023 (the last day before the temporary orders took effect). Citing A.R.S. § 25-809, the court also ordered Father to pay Mother $296,497 in retroactive child support "from October 31, 2021 to October 31, 2023." The court set ongoing child support from Father to Mother at $2,509 per month for both children. The court also granted Mother's request for attorneys' fees under A.R.S. § 25-324(A).

¶10 Father moved to alter or amend the court's order under Arizona Rule of Family Law Procedure ("Rule") 83. Mother moved to strike Father's Rule 83 motion because his motion was 28 pages long excluding attachments, and Rule 35 limits motions to no more than "17 pages." The court granted Mother's motion to strike and summarily denied Father's Rule 83 motion.

¶11 Father timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶12 Father argues the superior court erred in its calculations of past and ongoing child support. He also challenges the court's summary denial of his motion to alter or amend and award of attorneys' fees to Mother. We review each for an abuse of discretion. *Jacobs v. Jacobs*, 259 Ariz. 467, 470, ¶ 16 (App. 2025) (child support order); *Wisniewski v. Dolecka*, 251 Ariz. 240, 241, ¶ 5 (App. 2021) (denial of motion to alter or amend); *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014) (attorneys' fees). A court "abuses its discretion when it commits legal error" or when the record lacks competent evidence to support its decision. *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019).

### I.     Past Child Support

¶13 Father first argues the superior court erred by ordering him to pay Mother any past child support for Sally under A.R.S. §§ 25-320(C)

4

and -809. Father contends that although the Washington order refers only to Susan, the parties agreed that the stipulated support amount was intended as support for both children, so the court was merely modifying child support, not establishing it in the first instance. While we are sympathetic to Father's concern that Mother not receive a "windfall" of double child support, his argument is legally unsupported for the following reasons.

¶14            First, accepting Father's argument that the support amount in the Washington order was meant to cover Sally as well as Susan requires us, and would have required the superior court, to consider parol evidence when interpreting the Washington order. As Mother points out, parol evidence cannot be considered in interpreting judgments, and we are obligated to interpret a judgment on its face. *In re Marriage of Zale*, 193 Ariz. 246, 248–250, ¶¶ 9–15 (1999) (explaining that a judgment "exists as an independent resolution by the court of the issues before it and rightfully is regarded in that context and not according to the negotiated intent of the parties"); *see also Grynberg v. Shaffer*, 216 Ariz. 256, 257, ¶ 6 (App. 2007) ("[A] foreign judgment properly filed with the superior court of Arizona will be treated in the same manner as a domestic judgment."). The Washington order only includes Susan and makes no reference to Sally, nor does it even mention that Father and Mother have any children other than Susan. The only reasons listed for the upward deviation in the order are that the "parent or parents in this case has . . . very different living costs, which are beyond their control," and the "parents['] agreement." Interpreting the Washington order on its face, Father and Mother agreed to an upward deviation of child support for Susan only.

¶15            Second, the notion that the Washington order covered Sally runs contrary to foundational jurisdictional principles. Without adjudication or admission of paternity of Sally before it, the Washington court had no jurisdiction to order Father to pay child support for her. *See Pippins v. Jankelson*, 754 P.2d 105, 107 (Wash. 1988) (explaining that "[t]he court's power to modify child support is of course dependent upon a prior determination of paternity" and that admission of paternity in a stipulated order "is sufficient for this purpose"). Father's argument that the Washington court ordered support for both children therefore requires us to assume that the court acted in excess of its jurisdiction. We decline to do so. *See Martin v. Martin*, 182 Ariz. 11, 15 (App. 1994) (providing that an order is void if issued without jurisdiction).

¶16            Third, Father's contention is that because the Washington order covered Sally as well as Susan, the superior court was faced with a

modification of child support as opposed to establishing child support for Sally in the first instance, and thus erred by following A.R.S. §§ 25-320(C) and -809 instead of A.R.S. § 25-327(A) in calculating retroactive support. It is true Father's petition before the court was to "modify" child support for Sally. But it is undisputed that outside of the temporary order, there has never been a child support order explicitly covering Sally,[1] and as we have explained, we cannot accept Father's argument that the Washington order should be construed to cover her. Because there had never been a permanent child support order for Sally, the superior court was correct to treat Father's petition to modify as a petition to establish child support. *See State ex rel. Corbin v. Tolleson*, 152 Ariz. 376, 380–81 (App. 1986) (providing that generally, "the nature of a motion will be determined by its substance and not by its title").

**¶17**        Father also argues that even if the Washington order does not explicitly cover Sally, Mother's claim for past child support is barred by the equitable defenses of waiver and estoppel. Regardless of their potential merit, Father did not raise these defenses to the superior court prior to his Rule 83 motion. The court summarily denied Father's motion based on its length. Thus, Father has waived these defenses, and we cannot consider them for the first time on appeal. *See Conant v. Whitney*, 190 Ariz. 290, 293 (App. 1997) (providing that issues raised for the first time in a motion for a new trial are generally waived on appeal); *see also Baldere v. Stark*, 1 CA-CV 17-0458 FC, 2018 WL 2248259, at *2, ¶ 11 (Ariz. App. May 17, 2018) (mem. decision) (finding that an appellant waived equitable defenses on appeal when he did not raise them prior to his Rule 83 motion).

**¶18**        We do, however, agree with Father's general assertion that the superior court erred in its past child support calculation. Father argues the retroactivity statute the court should have applied to its calculation is A.R.S. § 25-327(A), which applies to child support modifications. That statute does not apply because, as we explained, the court was faced with

---

[1]        This case also differs from *In re V.L.*, in which the court determined that a child support order was a modification because, although no child support was ordered in a previous parenting-time order, the superior court had no discretion to order parenting time without ordering child support. 258 Ariz. 391, 395–96, ¶¶ 12–17 (App. 2024). The *V.L.* court therefore construed the prior order as a child support order establishing zero child support. *Id.* In this case, the lack of child support in the initial order was based on a lack of jurisdiction. Unlike with the order in *V.L.*, we cannot construe a statement of non-jurisdiction to be an order establishing child support at zero.

an establishment of child support, not a modification. But the court did err by ordering retroactive support under both A.R.S. §§ 25-320(C) and -809 for overlapping periods of time. We have previously said that A.R.S. § 25-320(C) applies to marital dissolutions, while A.R.S. § 25-809 applies to paternity actions. *Petro v. Gianini*, 1 CA-CV 16-0313 FC, 2017 WL 1279002, at *1, ¶ 6 & n.2 (Ariz. App. Apr. 6, 2017) (mem. decision). Though *Petro* was nonprecedential, its reasoning makes good sense because A.R.S. § 25-320 falls under Chapter 3 of Title 25, titled "Dissolution of Marriage," and A.R.S. § 25-809 is in Chapter 6, titled "Maternity and Paternity Proceedings." Because the parties were never married and Father's initial petition was a complaint in paternity, only A.R.S. § 25-809 applies. The court therefore erred by awarding $36,225 of additional past child support under A.R.S. § 25-320(C) overlapped with its award under A.R.S. § 25-809. We, therefore, vacate the $36,225 award.

¶19         Furthermore, the superior court ordered $296,497 in past child support under A.R.S. § 25-809 "from October 31, 2021 to October 31, 2023." Under A.R.S. § 25-809(A)–(B), the court is obligated, subject only to the application of any equitable defenses, to order past support for at least the period between the filing of Father's petition (July 2, 2019) and the day before Father began paying support for Sally under the temporary orders (October 31, 2023). *See Gelin v. Murray*, 251 Ariz. 544, 547, ¶ 14 (App. 2021). The court's listed start date of October 31, 2021, is not in line with A.R.S. § 25-809, and at oral argument, Mother conceded that the $296,497 amount is an overcalculation even based upon a correct timeframe. We therefore remand to the superior court to recalculate back child support in accordance with A.R.S. § 25-809 (A)–(B).

## II.     Temporary and Ongoing Child Support

¶20         Father next argues the superior court erred in a recalculation of the temporary child support amount it included in its final order. The court found it had undercalculated Father's income when it issued the temporary orders, and that based on a recalculation, Father owed Mother $6,168 in unpaid child support since the temporary orders became effective on November 1, 2023. In calculating that amount, the court set the number of parenting-time days Mother had with Sally since November 1, 2023, at 120 days.

¶21         Father contends the superior court should have calculated the unpaid support amount using 79 days rather than 120 based upon Mother's parenting time with Sally since the temporary orders issued. Mother

counters that 120 days is correct "based on the average number of days each parent has with the children overall."

¶22 We agree with Father that the record does not clearly support the use of 120 days of parenting time for Mother. Under the Guidelines, when parents have multiple children with different parenting plans and each parent exercises more than half of the parenting time with at least one child, the court must use separate worksheets to determine support for each child. Guidelines § V.F. The court should not have used the "average days each parent has with the children overall," as Mother contends.

¶23 The superior court appears to have used separate worksheets for each child in calculating both past temporary and current support, but the 120-day parenting-time allotment on Sally's temporary-support worksheet does not match the number of days awarded to Mother in the temporary orders or the number of actual days Father asserts Mother exercised during that period. We therefore remand to the superior court to determine the number of parenting-time days Mother exercised during the temporary orders period and then recalculate Father's payment of unpaid child support under the temporary orders.

¶24 Father also argues the superior court made a similar parenting-days error in its calculation of current child support. The court used 120 days of parenting time for Mother in Sally's worksheet for this calculation too, and Father argues it should have used 82 days.

¶25 In its final order, the superior court imposed the same parenting time schedule Mother had been exercising with Sally under the temporary orders. As we explained, 120 parenting-time days does not appear to be supported by that parenting-time schedule. We therefore remand to the superior court to recalculate child support for Sally using a recalculation of Mother's parenting-time days.

### III. Motion to Alter or Amend

¶26 Father also argues the superior court erred by summarily denying his motion to alter or amend the judgment under Rule 83 based on its overlength. Because Father's Rule 83 motion contained challenges to the order unrelated to those he raises on appeal, we separately address this argument.

¶27 Under Rule 35(a)(2), "a motion must not exceed 17 pages, not including attachments." If "a motion or response does not substantially

comply with section (a)" of Rule 35, "[t]he court may summarily grant or deny" the motion. Ariz. R. Fam. Law P. 35(b)(1).

**¶28** Father's Rule 83 motion was 28 pages long. Even excluding attachments, Father's motion far exceeded the 17-page limit. Father could have sought leave to file an overlength motion but did not. *See* Ariz. R. Fam. Law P. 35(a)(2) (providing that motions must not exceed 17 pages *unless* the court orders otherwise). Father argues the superior court could have imposed a less severe remedy than summary denial. That is true. Regardless, Rule 35 expressly grants the superior court authority to do what it did. Father has shown no abuse of discretion in the court summarily rejecting Father's overlength motion as Rule 35 allows.

## IV.    Attorneys' Fees

**¶29** Finally, Father argues the superior court erred by granting Mother's request for attorneys' fees under A.R.S. § 25-324(A). Under that statute, a court may award attorneys' fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A). The court found that "there is [a] substantial disparity of financial resources between the parties" and that both parties "did not act unreasonably in the litigation."

**¶30** Father does not dispute the court's finding of disparity of financial resources between the parties, but he argues Mother's fee award should be vacated or reduced because she took unreasonable positions throughout the proceedings. He points to her position on past child support which, based on the outcome of this appeal, is not an unreasonable position. He also points to other stances Mother has taken regarding parenting time, discovery, and other issues in the case that he claims were unreasonable.

**¶31** While the litigation, and the parties' relationship in general, has clearly been contentious, the superior court expressly considered the reasonableness of both parties' positions as required by A.R.S. § 25-324(A). Moreover, "an applicant need not show both a financial disparity and an unreasonable opponent in order to qualify for consideration for an award" of attorneys' fees under A.R.S. § 25-324(A). *Magee v. Magee*, 206 Ariz. 589, 591, ¶ 8 n.1 (App. 2004). Father does not dispute that Mother showed a financial disparity. Consequently, he has shown no abuse of discretion in the court's award of attorneys' fees to Mother.

**¶32** Both parties request their attorneys' fees on appeal under A.R.S. § 25-324(A). After considering the parties' financial resources and

reasonableness of positions taken on appeal, in our discretion, we decline to award attorneys' fees to either party.

## CONCLUSION

**¶33**        We vacate the portions of the superior court's order regarding child support and remand for recalculation pursuant to this decision. We affirm the portion of the court's order awarding Mother attorneys' fees and its denial of Father's Rule 83 motion.

